## Case No. 16,223.

### UNITED STATES v. The SARAH B. HARRIS.

[4 Cliff. 147; [1] 12 Int. Rev. Rec. 54.]

Circuit Court, D. Maine. Sept. Term, 1870. [2]

CUSTOMS DUTIES—GOODS FREE OF DUTY—UNLOADING WITHOUT PERMIT—ACT MARCH 2, 1799.

1. Under section 50 of the act of March 2. 1799 [1 Stat. 665], merchandise free of duty cannot be lawfully unladen and delivered without a written permit from the collector and naval officer, if any, for such unlading and delivery.

2. The permit required by section 50 is the same as the one mentioned in section 49, and that manifestly is a written permit.

3. If congress had intended that goods not dutiable should be unladen and delivered without the permit described in section 49 of the collection act, evidence of such intention would be found in some part of the act. None such is to be found.

4. Innocence of intention cannot, any more than ignorance of law, afford a defence to the master or owner of a vessel for a violation of the prohibition contained in section 50, of the act of March 2, 1799.

[Cited in U S. v. Curtis, 16 Fed. 188.]

[1] [Reported by William Henry Clifford, Esq., and here reprinted by permission.]
[2] [Affirming Case No. 12,344.]

5. If goods (mackerel) were the property of an American citizen, taken on board an American vessel at a foreign port and consigned to American consignees, were landed at a foreign port for transshipment to the American port, were caught in an American vessel by American fishermen, and shipped to the American port in the American vessel, still they could not be unladen at the American port without a written permit under section 50 of the collection act.

Libel of information against the schooner Sarah B. Harris, her tackle, apparel, and furniture, for a violation of section 50 of the act of March 2, 1799. Goods imported or "brought" in any ship or vessel from any foreign port or place, cannot at any time be lawfully unladen or delivered from such ship or vessel, within the United States, without a permit from the collector of the port, and naval officer of the same, if any, for such unlading and delivery; and the express provision is that all such goods, so unladen or delivered contrary to the said prohibition, shall become forfeited, and may be seized by any of the officers of the customs, and where the value thereof, according to the highest market price of the same at the port or district where landed, shall amount to $400, the vessel, tackle, apparel, and furniture shall be subject to like forfeiture and seizure. 1 Stat. 665; Waring v. The Mayor, 8 Wall. [75 U. S.] 118.

Pursuant to that provision, the schooner in this case was seized on the 4th of May, 1867, and the allegation of the information was that she was forfeited to the United States, because one hundred barrels of mackerel, of the value of $2,000, were, at the time alleged in the information, imported in the said schooner from Port Mulgrave, in the province of Nova Scotia, and were at the time and place alleged, to wit, at Deer Isle, in the district of Maine, on the 1st day of November, 1866, unladen and delivered from the said schooner, without a permit for that purpose from the collector, and naval officer of the port where the said goods were so unladen and delivered. Full proof was exhibited in the record that the quantity of mackerel described in the information was imported in the schooner, and that the same were unladen and delivered at the time and place therein set forth, and it was not denied that the mackerel in question exceeded in value the sum of $400.

George F. Talbot, U. S. Atty.
Bradbury & Bradbury, for claimants.

CLIFFORD, Circuit Justice. American ships are forbidden to bring goods from any foreign port into the United States, unless the master thereof shall have a manifest in writing, signed by the proper person, describing the goods and the vessel, and containing the name of the port where the goods were taken on board and the name of the port for which the same are consigned or destined. 1 Stat. 644. Imported goods may be entered for consumption or for warehousing, but the entry, in either case, must be in writing, and must be made to the collector of the district within fifteen days after the required report of the arrival of the vessel is filed by the master. Id. 649. Such goods are required to be landed in open day, and the same section provides that they shall not at any time be landed or delivered from such ship or vessel "without a permit from the collector, and naval officer, if any, for such unlading and delivery." Id. 665. Authority to grant a permit does not exist until the duties are paid or secured to be paid, and the duties are never paid or secured to be paid before the goods are imported, nor before they are entered either for consumption or warehousing. Masters of such ships or vessels, on their arrival within four leagues of our coast, or within any of the bays, harbors, ports, or inlets thereof, are required, upon demand, to produce the manifest of the goods to such officer of the customs as shall come on board their ship, for his inspection, and it is made the duty of the said officer of the customs to certify the fact of compliance with that requirement and the day when it was so produced. Examination of the entry is usually made by the entry clerk, and if found to be correct, the collector proceeds to estimate the duties "on the invoice value and quantity," and if the estimated amount of duty is paid or secured to be paid as required by law, the collector certifies the invoice and grants a permit in due form for the unlading and delivery of the cargo. Waring v. The Mayor, 8 Wall. [75 U. S.] 110; Gen. Reg. 1857, p. 145. Congress, therefore, has prescribed the rule of decision, and while that provision remains in force no goods brought in any ship or vessel from any foreign port or place, unless falling within some exceptional rule not applicable in this case, can lawfully be unladen or delivered from any such ship or vessel within the United States without a permit from the collector, and naval officer, if any, for such unlading and delivery.

Three principal defences are set up by the appellants. (1) They insist that the proofs show that the deputy collector assented to the unlading and delivery of the mackerel at the time and place alleged in the information, and they contend that a verbal permit under the circumstances disclosed in the evidence, is sufficient to shield the schooner from the forfeiture demanded in the act of congress on which the information is founded. (2) Suppose the rule is otherwise, and that a written permit is required where the goods unladen and delivered are dutiable, still they contend that the decree of the district court in this case was erroneous, because, as they insist, the mackerel in question were American caught, and not subject to duty, and they contend that the act of congress, even if it does require a written permit for the unlading and delivery of imported goods subject to duty, contains no such requirement where it appears that the goods are not dutiable,

but that the purpose of the law, at least in all such cases, is as well answered by a verbal permit as by one in writing. (3) Accessories, other than the master, are not liable to the penalty annexed to the offence, unless they were "knowingly concerned or aiding therein or in removing, storing, or otherwise securing the goods," and the claimants insist that the vessel in this case is not liable to forfeiture, because, as they assume, the master supposed and believed that the mackerel were American caught, and that they were not subject to duty as imported goods.

Goods imported from a foreign country are required to be entered at the custom-house where the vessel voluntarily arrives with intent to unlade the cargo. They may be entered for consumption or for warehousing, but they must be regularly entered, and the duties be paid or be secured to be paid, before any authority exists to grant a permit for their unlading and delivery. Until the permit is received by the inspector, no one has authority to remove the hatches or to break bulk, but the cargo is under the charge of the officer of the customs. By the directions of the principal collection act, the collector, jointly with the naval officer, or alone where there is none, shall, according to the best of his or their judgment or information, make a gross estimate of the amount of the duties on the goods to which the entry of any owner or consignee, his or her factor or agent, shall relate, which estimate shall be indorsed upon such entry and be signed by the officer or officers making the same.

Before any permit can be issued, the amount of the duties so estimated must first be paid or be secured to be paid, and the provision then is that the collector, together with the naval officer, where there is one, or alone where there is none, shall grant a permit to land the goods, &c., whereof entry shall have been so made, and then, and not before, it shall be lawful to land the said goods. Permits are to be "granted" by the collector, together with the naval officer where there is one, or alone where there is none, and as a further evidence that permits are to be made in writing, the provision is that they shall specify as particularly as may be the goods to be delivered. namely, the number and description of the packages, whether trunks, bale, chest, box, case, pipe, hogshead, barrel, keg. or any other packages whatever, with the mark and number of each package, and, as far as circumstances will admit, the contents thereof, together with the names of the vessel and master, in which, and the place from whence, they were imported, and no goods . . . shall be delivered by any inspector or other officer of the customs that shall not fully agree with the description thereof in such permit. Evidence that congress intended that the permit should be in writing is derived from every part of the regulations upon the subject; but if more be needed to make it certain that such was the intention of congress, it is found in the fact that the form of the permit is prescribed by law, and the same section enacts that the form of all permits for the purposes aforesaid, and for deliveries from the public stores, shall be as therein directed and prescribed. 1 Stat. 664. Prior to the granting of the permit, the duties are estimated on the invoice value and quantity, and the amount as estimated being paid or secured to be paid, the collector certifies the invoice and grants a permit in due form for the unlading and delivery of the cargo, first designating the packages, one in ten, to be sent to the public store for examination and marking the same on the entry, invoice, and permit. Gen. Reg. 1857, p. 145.

Dutiable goods, therefore, cannot be unladen or delivered without a written permit from the collector as prescribed by law and the regulations of the treasury department, but the appellants contend that the mackerel in this case were American caught, and that as such they were not dutiable, and that imported goods not dutiable may be unladen and delivered without a written permit for that purpose. Evidently the proposition of the appellants embraces two questions, one of fact and one of law; and it is clear that the defence in this respect must fail unless both are found in their favor. Duly enrolled and licensed for the mackerel fishery, the schooner sailed from Deer Isle, in this district, about the last of August, 1866, on a second cruise for mackerel in the bay of Chaleur, with a license to touch and trade at any foreign port during the trip. They proceeded to the bay, and having caught some two hundred barrels, they touched at Port Mulgrave. and there took on board as freight the one hundred barrels of mackerel described in the information, and arrived on the return voyage at Green's Landing, in Deer Isle, on the 21st of the same month. On the day following, the master reported the arrival of the vessel, and produced to the deputy collector of Deer Isle an "inward foreign manifest," describing the cargo as one hundred barrels of mackerel, shipped by Charles R. McDonell, of the American fishing schooner Olivia Maria, taken on board at Port Mulgrave, Nova Scotia, and consigned to Davis & Co., at Green's Landing, Deer Isle. Although there were more than three hundred barrels of mackerel on board, including those caught by the crew during the trip, still the master made oath that the manifest contained a just and true account of all the goods on board the schooner. He also presented at the same time the certificate of Charles R. McDonell, as importer. certifying under oath that he landed at Port Mulgrave, Nova Scotia, for transshipment to the port of Deer Isle, in the United States. one hundred barrels of mackerel, and that the same were caught in said American vessel by American fishermen, and shipped to the said port of Deer Isle by the said schooner.

Appended to the document is the certificate

of Vincent J. Wallace, dated October 15, 1866, that the same was signed and declared before him as comptroller of the customs. Accompanying the certificate there was also the sworn statement of two persons representing themselves as merchants at that port, in which they declare that the statements of McDonell in his certificate were just and true and worthy of full faith and credit. Warren, the deputy collector at Deer Isle, testifies that the master of the schooner came to his office Oct. 22, 1866, and filed with him the before-mentioned certificates, and entered his vessel; that he "made the entry of the one hundred barrels of mackerel before me;" that he gave him no written permit, but thinks that he gave him a verbal one, and that the master asked him if it was all right, and that he told him "Yes, go ahead and land your mackerel." On cross-examination, the witness stated that he did not inspect the cargo nor send any one to inspect it, and that he had no knowledge of the matter, except what he derived from the report of the master and from the papers he filed with him at the time. Beyond doubt, the evidence shows that due report was made of the arrival of the schooner at the port of Deer Isle, and that she brought as cargo one hundred barrels of mackerel, but the vessel was never boarded by an officer of the customs, nor was her cargo ever inspected in any way or to any extent. Informed, as the deputy collector was, that the mackerel were American caught, and that they had been transshipped from an American vessel, he gave the matter no attention, except to say to the master, in answer to his inquiry, that it was all right, and that he might land the goods. Viewed in the light of these facts, as the case must be, several questions arise which must be separately answered. (1) Whether the goods were or were not dutiable; because if they were dutiable, it has already been determined that they could not be lawfully unladen or delivered without a written permit. (2) If the mackerel were not dutiable, whether a verbal permit was or was not sufficient to save the goods and the vessel from forfeiture. (3) Whether the verbal assent of the deputy collector to the landing and delivery of the mackerel constitutes a defence to the charge of forfeiture.

Influenced by · the representations of the master that the mackerel were American caught, and believing that a written permit was not necessary for the unlading and delivery of goods not dutiable, the deputy collector admitted the goods to entry duty free, and consented, in the words before mentioned, that they might be unladen and delivered without being inspected, and without any written permit. They were supposed to have been caught by the crew of the Olivia Maria, an American vessel, and to have been the property of her master, Charles R. McDonell, but the district court found that they were British mackerel, the property of one

John Moore, a resident of Port Mulgrave, and that the same were exported from that port and that the mackerel were subject to duty under the revenue laws of the United States. Examined in detail as the testimony was by the district judge, as appears by his opinion, it does not seem to be necessary to reproduce the statements of the respective witnesses. Suffice it to say that no doubt is entertained that the weight of the testimony, as then exhibited, fully justified the conclusion formed by the district judge. Some conflict of statement existed in the testimony, but the careful analysis of it made by the district judge showed conclusively that the mackerel were British caught, and that the representations of the master were incorrect. Much additional testimony has been furnished since the appeal, and it must be admitted that the new testimony intensities the conflict, but the court here is of the opinion that the mackerel were British caught, and that they were exported from Port Mulgrave as the property of John Moore.

Concede the fact to be otherwise, still the court is of the opinion that the mackerel, even under the circumstances assumed by the appellants, could not be lawfully unladen and delivered without a written permit. "Unavoidable accident, necessity, or stress of weather" are not set up in this case, nor is there any evidence exhibited to support any such defence. Authorities founded upon the exceptions· in section 27 of the collection act have no application in this case, as the unlading and delivery of the goods were voluntary and intentional, and without any unavoidable accident, necessity, or stress of weather. 1 Stat. 648; U. S. v. Hayward, [Case No. 15,336]; Peich v. Ware, 4 Cranch [8 U. S.] 358. Forfeiture of property, it is said, is not incurred under the revenue laws, unless the acts of the master or owner are attended with fraud, misconduct, or negligence; and it is insisted that the owner is not to suffer for the fraud, misconduct, or negligence of the revenue officer, in which he did not participate. Fraud is not imputed to the deputy collector, but it is clear that he was guilty of negligence and omission of duty so culpable as to amount to misconduct, and it is clear to a demonstration that the master voluntarily participated in that misconduct. Six Hundred and Fifty-One Chests of Tea [Case No. 12,916]. Only one hundred barrels of mackerel were placed on the manifest, and the master voluntarily broke bulk and landed the cargo before the same had been inspected, and without any written permit. Examined in view of these suggestions, it is apparent that the case before the court depends upon the general question whether goods not dutiable, may be lawfully unladen and delivered without a written permit, and that it does not fall within any of the exceptions contained in the collection act, or any such as are recognized as valid by the decisions of the federal courts. . Ignorance of the

law furnishes no excuse, nor does it constitute any valid defence that the deputy collector was as uninformed in that behalf as the master. U. S. v. Lyman [Id. 15,647]. Unquestionably the permit required by section 50 of the collection act is the permit, the form of which is given in the preceding section of the same act, and nothing can be more comprehensive or explicit than is the language of that requirement, in which it is provided that no goods brought in any ship or vessel shall be unladen or delivered from such ship or vessel at any time, within the United States, without a permit from the collector, and naval officer, if any, for such unlading or delivery. Had congress intended that goods not dutiable should be unladen and delivered without such a permit as that described in section 49 of the collection act, it must be presumed that some evidence of such an intention would be found in some part of the act; but nothing of the kind appears. Free goods are by that form to be included in the permit, as well as such as are dutiable. Reference is made by the appellants to sections 45–47, as affording such evidence; but it is quite clear that they afford no support to the proposition. Merchandise free of duty is required to be placed on the manifest and entered, as well as that subject to duty, and a written permit for the unlading and delivery of such is just as essential to guard against smuggling and protect the public interest as where the importation is subject to duty.

Innocence of intention will not, any more than ignorance of the law, afford a defence to the master or owner of a vessel, for a violation of the prohibition contained in section 50 of the collection act. They are forbidden to unlade or deliver imported goods brought into the United States, without the required permit, and the provision is that if they do, and the goods so unladen and delivered amount to $400, the vessel, tackle, apparel, and furniture shall be subject to seizure and forfeiture.

Decree affirmed, with costs.