MISSISSIPPI & RUM RIVER BOOM CO. (PATTERSON v.). See Case No. 10,829.

MISSISSIPPI, ETC., BOOM CO. (UNITED STATES v.). See Case No. 15,784.

MISSISSIPPI CENT. R. CO. (ILLINOIS CENT. R. CO. v.). See Case No. 7,008.

MISSISSIPPI VAL. & W. R. CO. (WALKER v.). See Case No. 17,079.

---

# Case No. 9,652.

## The MISSOURI.

[3 Ben. 508; 10 Int. Rev. Rec. 179; 11 Int. Rev. Rec. 5; 2 Chi. Leg. News, 97.] [1]

District Court, E. D. New York. Nov., 1869.

### LIEN FOR PENALTY—FALSE MANIFEST—JURISDICTION.

1. Under the 24th section of the act of March 2, 1799 (1 Stat. 646), which enacts that if goods imported in a vessel of the United States are not entered on the ship's manifest, the master shall forfeit and pay a sum equal to their value, and the 8th section of the act of July 18, 1866 (14 Stat. 180), which provides that where a vessel or her owner or master are subject to a penalty for a violation of the revenue laws, "such vessel shall be holden for the payment of such penalty, and may be proceeded against summarily, by libel, to recover such penalty, in any district court of the United States having jurisdiction of the offence," it is not necessary, in a libel filed against a vessel to recover such a penalty, to aver any prior seizure of the ship.

[Followed in The Missouri, Case No. 9,653. Cited in U. S. v. The Missouri, Id. 15,785; The Joshua Leviness, Id. 7,549; The Saratoga, 9 Fed. 324; The Paolina S., 11 Fed. 173. Followed in The Snow Drop, 30 Fed. 80. Cited in The C. G. White. 64 Fed. 581.]

2. It is not a necessary preliminary to such a suit, that the ship should have been seized, or that proceedings to recover the penalty should have been instituted against the master or the owner personally.

[Followed in The Missouri, Case No. 9,653. Approved in U. S. v. The Queen, Id. 16,107. Cited in The Saratoga, 9 Fed. 328. Followed in The Snow Drop, 30 Fed. 80. Distinguished in The Sidonian, 38 Fed. 441.]

3. Such a suit against a vessel is a civil case of admiralty and maritime jurisdiction, and is within the jurisdiction of the court. It is so, because the subject-matter is maritime in its nature.

[Followed in The Missouri, Case No. 9,653. Cited in The Helvetia, Id. 6,345. Followed in U. S. v. The Queen, Id. 16,108. Cited in Pollock v. The Sea Bird, 3 Fed. 575.]

4. Liens upon a ship are necessities of her existence and usefulness. They are to her what credit is to a merchant.

---

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission. 10 Int. Rev. Rec. 179, contains only a partial report.]

5. A proceeding against a ship, in rem, is, in some sense, her bankruptcy proceeding.

In admiralty.

B. F. Tracy, U. S. Dist. Atty.
Goodrich & Wheeler, for claimants.

BENEDICT, District Judge. This is a proceeding in rem instituted in behalf of the United States against the steamer "Missouri," to recover the sum of $2,998.00, for which sum it is claimed that this steamer is holden to the United States under the laws thereof.

The averments of the libel are, that, at a certain specified time, certain goods, wares and merchandise, which are particularly described, were imported and brought into the United States from a foreign port in this vessel, which were not included in her manifest, contrary to the act of congress passed March 2, 1799, and which belonged to or were consigned to the master, mate, officers and crew of said vessel; that the value of said merchandise was $2,998, and, by reason of the premises, and by force of the statute in such case made and provided, the said vessel, her tackle, apparel and furniture, became liable to the United States for the payment of the sum of $2,998, as a penalty. Wherefore it was prayed that process in rem issue against said vessel, her tackle, apparel and furniture, to enforce the payment of said penalty, and that the vessel might be arrested, and the said penalty pronounced for by the court, and the vessel condemned and sold to pay the same. Under this libel the usual process in rem, according to the course of the admiralty, was issued against the vessel, by virtue of which she was duly seized in waters within the jurisdiction of this court, whereupon the claimants duly appeared and filed their claim, and at the same time excepted to the libel—which exceptions are now to be disposed of.

The question raised as to the jurisdiction is first to be considered. A statement of the provisions of law under which this libel is filed, is necessary to show the precise questions which the case presents.

The act of March 2, 1799, § 24 (1 Stat. 646), which is referred to in the libel, provides as follows: "If any goods, wares and merchandise shall be imported or brought into the United States in any ship or vessel whatever belonging in the whole or in part to a citizen or citizens, inhabitant or inhabitants of the United States, from any foreign port or place, without having a manifest or manifests on board, agreeably to the directions in the foregoing section, or which shall not be included or described therein or shall not agree therewith: in every such case the master or other person having the charge or command of such ship or vessel shall forfeit and pay a sum of money equal to the value of such goods not included in such manifest or manifests."

Subsequently it was by statute enacted (see Act July 18, 1866, § 8, 14 Stat. 180): "That in any case where a vessel, or owner, or master, or manager of a vessel shall be subject to a penalty for a violation of the revenue laws of the United States, such vessel shall be holden for the payment of such penalty, and may be seized and proceeded against summarily, by libel, to recover such penalty, in any district court of the United States having jurisdiction of the offence."

Under these two provisions of law it is here contended, on the part of the government, that, by reason of the facts set forth in the libel, a lien has been created upon this steamer for the sum of $2,998, which lien may be enforced by ordinary proceedings in rem upon the instance side of the court, and that such proceedings may be taken in any district where the vessel may be found, without previous seizure thereof—all which propositions the claimants deny.

The act of July 18, 1866, under which this libel is filed, is an instance of incorporating into the revenue laws that marked feature of the maritime law which treats a ship as a person, and makes her personally responsible for the acts of those who own or control her. Such legislation is but the offspring of that necessity, out of which sprang the rule of the maritime law. It was long ago found necessary, in order to regulate the business and conduct of ships, which wander everywhere and are the efficient agents both for good and evil of persons often entirely unknown or impossible to be found, as between man and man, to charge the ship—which is always known and can always be found—not only with the contracts but the torts of her master and her owners.

This same necessity has been felt in respect to the dealings of the ship master and ship owner with the government, and accordingly the act of 1866, in order to secure obedience to the revenue laws, causes the unlawful acts of the ship master and ship owner to charge the ship herself with the penalties prescribed for the violation of those laws.

The legal effect of this statute, therefore, taken in connection with the act of March 2, 1799, is to cause the unlawful transportation of cargo by the master, contrary to the act of March 2, 1799, to charge the ship with the penalty there prescribed, in the same manner as, according to the maritime law, a violation of the sailing rules by the master, which causes a collision, charges the ship with the damages ensuing.

In construing such a statute, milder, as it is, than many statutes, it should be borne in mind, that it is a revenue law, and, like all revenue laws, to be so construed as effectually to accomplish the intention of the legislature, and not, necessarily, with great strictness in favor of the defendant. Taylor v. U. S., 3 How. [44 U. S.] 210.

Let it be noticed, then, that the act does

not declare a forfeiture, but simply creates a charge upon the ship, and that the case made by the libel is not one of seizure, but of lien.

Property forfeited to the government may be seized, but I am not aware that a seizure is ever permitted, except when the title to the property has changed, by operation of law. A seizure is an assertion of title in the government, and the subsequent proceedings in court are proceedings to try the title so asserted. When the object of such a seizure is a ship, the subsequent proceeding is, in substance, a petitory suit, and within the admiralty and maritime jurisdiction of the United States. The act, therefore, would not support a seizure, for it does not order a forfeiture.

But, it is said, this cannot be so, because the act expressly provides for a seizure, when it declares that the ship "may be seized, and proceeded against summarily, by libel." The word "seized," as here used, cannot, however, be considered as referring to a revenue seizure, but to that seizure by the marshal, under the process of the court, which forms part of every proceeding in rem, in the admiralty. So construed, the provision for a seizure and summary hearing, upon a libel, is simply a statutory averment of the jurisdiction of the district courts, to enforce the lien, which the act creates, according to the course of the admiralty. This construction of the act is, certainly, reasonable, while to hold that the word "seizure," as used, was intended to authorize an assertion of title to property not forfeited, but simply subject to a lien, perhaps insignificant in amount, would be to give to the statute a strange and harsh effect. My opinion, therefore, is, the objection to the libel, that it does not aver a seizure within the district, must fail. No such averment is necessary, because no prior seizure could be legally made, in a case like this.

The case being, then, simply a proceeding to enforce a lien, the next question is, whether it is a civil case of admiralty and maritime jurisdiction. It might be deemed a sufficient answer to this question, to say, that the act, when it declares that the proceeding against the ship shall be by libel, clearly intended to declare the cases under it to be cases of admiralty jurisdiction. But if this be not so, or if a doubt be entertained as to the competency of the legislature to require a proceeding according to the course of the admiralty, in a case not within the constitutional provision, I hold the present case to be within the admiralty and maritime jurisdiction conferred by the constitution, and for two reasons.

One reason—to my own mind entirely satisfactory—is, that it is a proceeding to enforce a lien upon a ship. A ship is never free from liens. From her cradle on the stocks, to her grave in the sand, she is always, to a greater or less degree, encumbered by those charges which attach to her, under the rules of the maritime law. These liens are necessities of

her existence and usefulness as a ship. They are to the ship what credit is to the merchant. Without them, she must lie by the wall; by means of them, she plows the sea. A proceeding to enforce any lien upon a ship, by her sale—which is the only method of enforcing a lien—must, if injustice is to be avoided, call in question all the liens upon her, and must, accordingly, involve an adjudication upon liens created by the maritime law, and exclusively maritime in their nature. It would seem, therefore, that it might well be held, for this reason, if for no other, that all such proceedings should be taken in that court to which the determination of maritime questions more especially belongs.

And all such proceedings should be held to be within the jurisdiction of the admiralty, for the further reason that the proceeding in rem of the admiralty is the only proceeding, known to the law, which is competent to determine the rights which are liable to be involved by any attempt to enforce a lien upon a ship.

An illustration, such as might be presented any day, will serve to show the correctness of this proposition. Suppose, then, the case of a lien upon a ship, to the extent of her value, under this act of 1866, and that the ship proves to have been heavily bottomried abroad, and, on the voyage home, to have sustained a collision, by which a ship, equal to her in value, has been sunk. Of course, upon arrival, she owes a considerable sum to her crew, and her cargo turns out damaged by the disaster. If, in such a case, the lien of the government is to be enforced by a suit at law, who is to be the defendant? Do you say, the owners? They have no interest to defend, until they have successfully disputed both the bottomry and the collision demands. If you say, the bond-holder, his interest depends upon the validity of his bond, and the invalidity of the collision demand; and that, in turn, can only be recognized after it appears that the cause of the collision was faulty navigation of the vessel proceeded against; and what, in such a suit, is to become of the sailors, and of the demands of the numerous freighters?

To such a state of facts—and I have supposed no unreasonable case—a suit at law is inadequate. In all such cases, the proceeding in rem of the admiralty, to which all the world are parties—a proceeding which is, in some sense, the ship's bankrupt proceeding, whereby she is discharged of all her debts, and her value distributed among her creditors—a proceeding, of which the supreme court, in the case of The Moses Taylor, 4 Wall. [71 U. S.] 427, say: "The distinguishing and characteristic feature of a proceeding in admiralty is, that the vessel or thing proceeded against is itself seized, and impleaded defendant, and judged, and sentenced accordingly," —such a proceeding, I say, is a necessity, if injustice is to be avoided. By means of that most sensible and useful of legal proceedings,

the conflicting demands of the government, of the bondholder, of the owner, of the crew and of the freighters in the case supposed, are all easily adjudicated and disposed of at once—perhaps even the ship meanwhile earning a sum equal to them all, to the advantage of her owners, and the benefit of mankind.

My own opinion, therefore, is, that a sufficient reason for sustaining the jurisdiction of the admiralty in a case like this is to be found in the nature of the thing to be proceeded against—namely, a ship.

But a second reason can be given, and that is, that the subject-matter, which is the foundation of the charge upon the ship, is clearly maritime in its character, and therefore within the admiralty and maritime jurisdiction of the United States. The lien which is sought to be enforced arises, under the statute, out of an alleged unlawful importation of cargo by this ship. This is as clearly a "water transaction"—to use the words of Chief Justice Marshall—as the exportation of cargo, and in the case of The Vengeance, 3 Dall. [3 U. S.] 297, the jurisdiction was sustained upon the sole ground that the exportation of cargo in a ship was a water transaction. Such matters have indeed long been conceded to be within the lawful jurisdiction of the admiralty. Godol. 43.

If, then, the subject-matter out of which the lien arises be maritime, the lien, although created by statute, may be enforced in the admiralty. The St. Lawrence, 1 Black [66 U. S.] 522.

Because of the subject-matter, therefore, I hold the present proceeding to be a case within the admiralty and maritime jurisdiction of the United States.

Nor do I see any difficulties, in the way of enforcing the act of July, 1866, in accordance with these views, such as seem to have occurred to the minds of some, in considering the effect of similar provisions in the passenger laws. The provision of the act which requires the proceeding to be by libel in the admiralty, would doubtless be held to import that the lien is to be treated according to the principles and rules of the admiralty, which are ample to prevent injustice and also to protect commerce.

Again, it is objected to this libel that it fails to show jurisdiction in this court, inasmuch as the libel does not show that jurisdiction of a criminal prosecution for the illegal importation of the cargo in question is in the district court of this district, while the act of 1866 declares that the proceedings against the vessel shall be "in the district court having jurisdiction of the offence."

If it were necessary, controlling reasons could be assigned against holding the word offence, as here used, to refer to the criminal act of the master or owner, but I understand it to be conceded that this cargo was brought from a foreign port to the city of New York by way of Sandy Hook, and an amendment of the libel to correspond with the facts will therefore obviate the necessity of determining this point in this case. The offence, created by the 24th section of the act of March 2d, 1799, is complete when the goods are brought within the limits of a port of entry,—U. S. v. Ten Thousand Cigars [Case No. 16,450]; and all cargoes brought from sea by Sandy Hook to the port of entry of New York, first arrive at such port within the limits of the Eastern district of New York. Under any construction, this court would accordingly have jurisdiction. Furthermore, I apprehend that the provision of the act of February 25th, 1865, which confers upon this court concurrent jurisdiction with the Southern district of New York over all seizures and matters made or done in the waters of the harbor of New York, would cover the case.

There remains to consider one other objection to this libel, which is, that it contains no averment of a prior judgment against the master for the penalty now sought to be recovered against the vessel. Upon this question my opinion is, that, under the act of 1866, proceedings like the present may be taken against the vessel in the absence of any proceedings against the master or owner.

The obvious intention of the act was to enable the government to enforce the revenue laws by a prompt seizure and prosecution of the vessel, in case of a violation of them. It therefore declares that, when the master or owner incurs a penalty, the vessel may be seized and proceeded against summarily. If a forfeiture had been declared, any previous proceedings against the master would not have been suggested; and a forfeiture, to be followed by instant seizure without prior proceedings against any one, is frequently declared for the act of the master. Thus the act of March 2, 1799, forfeits the vessel, for the unloading of cargo before arrival at place of discharge, and also for the unloading without permit, or otherwise than in open day. The act of June 27, 1864, forfeits the vessel, for unloading except in presence of an inspector, and for a refusal of the person in charge to deliver the key. The act of July 18th, 1866, forfeits the vessel, for failure of the master to report at the first port all goods bought for use of the vessel in British provinces. The act of 28th March, 1826, forfeits the vessel, for neglect of the master to deliver his manifest.

In place of instant forfeiture of the whole vessel, the act of 1866 creates a lien, which is by far the milder form of punishment, and, if so construed as to render it as effective as possible, it will still be much less vigorous than many laws. It is easy, therefore, to say that the words, "holden for the payment of such penalty," used in this act, are intended to create an original liability on the part of the ship for a penalty equal to that imposed upon the master or owner, and that the words, "seized and proceeded against summarily," preclude the idea of

delay, and import that the proceeding may follow the unlawful act, and rest upon that alone—thus adopting the rule of the maritime law, that a ship may be treated as a person, and "judged and sentenced accordingly." The Moses Taylor, 4 Wall. [71 U. S.] 427; The Palmyra, 12 Wheat. [25 U. S.] 14.

And it will be found that great difficulties attend any other construction of the act for if it be held that the ship becomes chargeable by the unlawful act when committed, but can only be proceeded against at the termination of proceedings against the master or owner, which may be commenced at any time within five years, a most dangerous class of secret liens upon ships will be created, to the great detriment of commerce, with but little, if any, advantage to the government; while if it be held that under the act, the vessel first became chargeable upon the rendition of a judgment against the master or owner, the ship would become first chargeable long after the transaction, when she might meanwhile have been sold to innocent parties, or encumbered by liens to her full value, or removed to foreign parts.

A further objection to the latter construction seems to me also entitled to great weight, namely, that, under it, the owners and other parties interested in the ship would be debarred from the right to contest the question of liability for the penalty. A judgment against the ship master, in an action where he would be the only defendant, and of which no others would have notice, would be conclusive of the liability of the ship. I cannot believe that such was the intention of the legislature.

On the other hand, it may be said, that, under the construction here sought to be given to the act, the proceeding against the ship would often be a proceeding to collect an uncertain sum, inasmuch as many of the penalties imposed for violations of the revenue laws are, within certain limits, left to the discretion of the court which tries the offender.

To which the sufficient answer is, that the same discretion can as well be exercised in the proceeding in rem against the ship, as in the proceeding in personam against the master. Proceedings in rem, for sums uncertain and dependent on the judicial discretion, are common proceedings in the admiralty, as, for instance, actions for salvage, personal injuries, and the like.

The considerations, which I have thus endeavored to present, seem to me to lead forcibly to the conclusion to which I have arrived, that, under the act of 1866, taken in connection with the 24th section of the act of March 2, 1799, the facts alleged to exist in the present case are sufficient to create a lien upon this steamer for the amount of the penalty claimed, which may be enforced by a proceeding in admiralty in this court, without proof of a prior sei-

zure of the vessel or of a prior judgment against the master for such penalty.

Let an order be entered over-ruling the exceptions, and requiring the claimants to answer within one week, unless further time be granted.

[At a subsequent hearing, a decree was entered against the vessel for a penalty of $2,342, and costs. Case No. 9,653. This was affirmed upon appeal to the circuit court. Id. 15,785.]