## THE SARATOGA.

*(District Court, S. D. New York. November 1, 1881.)*

1. PENALTIES AND FORFEITURES—ACT OF FEBRUARY 8, 1881.

The word "seizure," used in the act of February 8, 1881, embraces seizures by the marshal under legal process for the enforcement of a penalty pursuant to section 3088 of the Revised Statutes, as well as seizures by revenue officers for the purposes of forfeitures.

In Admiralty.

*S. L. Woodford,* U. S. Att'y, and *W. C. Wallace,* Asst., for libellant.

*Goodrich, Deady & Platt,* for claimants.

BROWN, D. J. On the fourteenth day of July, 1881, as the steamship Saratoga, from Havana to New York, was coming up the bay and passing quarantine, some boxes of cigars, intended to be smuggled, without the knowledge or privity of the master or owner of the vessel, were dropped from the side of the vessel by some persons unknown. The cigars being of the value of over $400, and having been thus "unladen without a permit," the master of the vessel, by section 2873 of the Revised Statutes, became liable to a penalty of $400; and, by section 2874, the vessel, her tackle, apparel, etc., became liable to be forfeited to the United States. The cigars were thereafter seized and forfeited to the government. On July 20, 1881, the master was sued for the penalty of $400, and on July 21st the libel in this suit was filed to enforce the same penalty against the vessel, and she was seized by the marshal under process issued out of this court pursuant to section 3088 of the Revised Statutes.

The owners of the vessel appeared and filed exceptions to the libel, setting forth that the vessel was employed as a common carrier, and claiming that under the provisions of the act of February 8, 1881, the vessel is no longer subject to seizure for penalties in such cases, and asking that the libel be dismissed, as it does not appear that either the master or owners were "a consenting party or privy to the illegal acts." The government, though admitting these facts, claimed that the act of 1881 applies exclusively to cases of forfeiture, and of seizures for the purposes of forfeiture, and not to seizures under process to enforce penalties under section 3088.

The exceptions to the libel in this case are based upon the provisions of the act of congress passed February 8, 1881, which, with its title, is as follows:

"An act to amend the law relative to the seizure and forfeiture of vessels for breach of the revenue laws.

" Be it enacted by the senate and house of representatives of the United States of America in congress assembled, that no vessel used by any person or corporation, as common carrier, in the transaction of their business as such common carriers, shall be subject to seizure or forfeiture by force of the provisions of title 34 of the Revised Statutes of the United States, unless it shall appear that the owner or master of such vessel, at the time of the alleged illegal act, was a consenting party or privy thereto."

It is admitted that the Saratoga was engaged in the business of a common carrier, and that neither the owners nor the master were "a consenting party or privy to the illegal act" for which the penalty was incurred. The single question presented for decision is whether the word "seizure" used in the act of 1881 embraces seizures by the marshal under legal process for the enforcement of a penalty pursuant to section 3088 of the Revised Statutes, or whether it is to be limited exclusively, as claimed on behalf of the United States, to a seizure by revenue officers for the purposes of forfeiture.

Section 3088 of the Revised Statutes, under which the seizure in this case has been made by the marshal, is a part of title 34, and is as follows:

" Whenever a vessel, or the owner or master of a vessel, has become subject to a penalty for a violation of the revenue laws of the United States, such vessel shall be holden for the payment of such penalty and may be *seized* and proceeded against summarily by libel to recover such penalty."

This provision was first enacted as section 8 of the act of July 18, 1866, entitled "An act further to prevent smuggling, and for other purposes," and was incorporated in title 34 of the Revised Statutes, as section 3088, with the change of a few words not affecting the question here presented. The penalty here sought to be enforced was incurred under section 2873, which provides that "if any merchandise shall be unladen or delivered from any vessel contrary to the preceding section, without a permit, the master of such vessel * * * shall be liable to a penalty of $400;" and by the succeeding section, 2874, it is provided that all merchandise so unladen "shall become forfeited, and may be seized by the officers of the customs; and where the value thereof shall amount to $400, the vessel, tackle, apparel, and furniture shall be subject to like forfeiture and seizure."

The cigars intended to be smuggled in this case having exceeded the value of $400, the vessel, under section 2874, would have become liable to "forfeiture and seizure" but for the act of 1881, which, it is conceded, has relieved the vessel from forfeiture, or seizure for the

purposes of forfeiture, under that section. But the penalty of $400, imposed upon the master by section 2873 for the same occurrence, still remains unaffected by the act of 1881; and for that penalty it is claimed on behalf of the United States that the ship, under section 3088 above cited, may still be held and seized.

The seizure contemplated by section 3088, as held in the case of *The Missouri*, 3 Ben. 508, is a seizure by the marshal under the usual judicial process of the district court of the United States. This is more plainly indicated by the original eighth section of the act of 1866, which contains, at the end of the section as above cited, the additional words, "in any district court of the United States having jurisdiction of the offence," which words are omitted in the Revision.

Title 34, referred to in the act of 1881, relates to the collection of duties upon imports. There are numerous sections of this title whereby penalties may be incurred by the master for violations of the revenue laws, (2772, 2775, 2809, 2814, 2867, 2868, and others,) and for all these penalties the vessel, by section 8 of the act of 1866, now section 3088 of the Revised Statutes, could be held and seized. In the case of *The Missouri*, above quoted, the penalty was incurred by the master, under section 2809, for goods not being on the ship's manifest. There are also several other sections of this title whereby the vessel may become subject to forfeiture, and in all such cases the first step in proceedings for forfeiture must be a seizure by the revenue officers. From this it appears that there are two kinds of seizure of vessels equally provided for by title 34 of the Revised Statutes; the one class, a seizure by the officers of the revenue for the purposes of an entire forfeiture; the other class, a seizure by the marshal under process for the enforcement of some of the various penalties prescribed by that title. And in each alike the vessel was liable to seizure, though the master and owner might be in fact innocent of any offence.

It is under this state of the law that the act of 1881 declares generally and broadly that no vessel, in the cases stated, and unless it shall appear that the owners or master were a consenting party or privy to the illegal acts, shall be subject to seizure or forfeiture by force of the provision of title 34; *i. e.*, by force of any provision of that title. The vessel in this case has been seized; the seizure has been made by force of title 34,—that is, by section 3088, which is a part of that title,—and by no other right or warrant whatsoever. The right of seizure depends wholly upon that section. The case, therefore, falls within the general language of the act of 1881. I think

it clear, also, that it must be held to fall equally within the intent of the act, and that for several reasons:

1. Because the language of the act is plain and unambiguous; and according to the ordinary use and meaning of the words used it embraces this case.

The primary maxim for ascertaining the intent of a statute is to look first of all to the language of the act itself. Unless some contrary intent appears, its words are to be interpreted according to their ordinary use and meaning. In the case of *Maillard* v. *Lawrence*, 16 How. 251, the court says: "The popular and received import of words furnishes the general rule for the interpretation of public laws." If the language is unambiguous, and its application to the case in hand is apt, reasonable, and natural, the intent to include it ought not to be questioned; the plain sense of the words used is a sufficient evidence, as it is also the highest evidence, of the intent to embrace it.

Vattel, among his first maxims of interpretation, says, (B. 2, c. 17, § 263:)

"It is not permitted to interpret what has no need of interpretation· When an act is conceived in clear and precise terms,—when the sense is manifest and leads to nothing absurd,—there can be no reason to refuse the sense which it naturally presents. To go elsewhere in search of conjectures, in order to restrain or extinguish it, is to endeavor to elude it. If this dangerous method be once admitted, there will be no act which it will not render useless."

In the case of *Newell* v. *The People*, 7 N. Y. 97, the late circuit judge of this court said:

" Whether we are considering an agreement between parties, a statute, or a constitution, with a view to its interpretation, the thing we are to seek is the thought which it expresses. To ascertain this the first resort in all cases is to the natural signification of the words employed, in the order and grammatical arrangement in which the framers of the instrument have placed them. If, thus regarded, the words embody a definite meaning, which involves no absurdity and no contradiction between different parts of the same writing, then that meaning, apparent upon the face of the instrument, is the one which alone we are at liberty to say was intended to be conveyed. In such a case there is no room for construction. That which the words declare is the meaning of the instrument; and neither courts nor legislatures have the right to add to or take away from that meaning."

In *McCluskey* v. *Cromwell*, 11 N. Y. 601, *Allen*, J., quoting the passage last cited, also says:

"It is beyond question the duty of courts in construing statutes to give effect to the intent of the law-making power, and to seek for that intent in

every legitimate way. But in the construction both of contracts and statutes, the intent of the framers and parties is to be sought, first of all, in the words and language employed, and if the words are free from ambiguity and doubt, and express plainly, clearly, and distinctly the sense of the framers of the instrument, there is no occasion to resort to other means of interpretation. It is not allowable to interpret what has no need of interpretation, and when the words have a definite and precise meaning to go elsewhere in search of conjecture in order to restrict or extend the meaning. Statutes and contracts should be read and understood according to the natural and most obvious import of the language, without resort to subtle and forced construction for the purpose of either limiting or extending their operation."

Now the language of this act is plain and unambiguous. According to its grammatical construction, and the natural and obvious meaning of the words used, it prohibits every seizure of the kind described by force of any provision of title 34. The seizure in this case is one of the kind described, viz., of a vessel employed as a common carrier, where neither master nor owner was a consenting party or privy to the illegal act, and the seizure is made under title 34 exclusively. The seizure by a marshal for a penalty is as much a "seizure," both in the ordinary meaning of that word and in its legal sense, as a seizure by a revenue officer for the purpose of forfeiture. To seize is to "take hold of suddenly and forcibly; to take possession of by force." Worcester's Dict. In law, seizure is "the act of taking possession by virtue of an *execution* or *legal authority*." Bouvier's Law Dict. As respects the fact of seizure it matters not by what legal officer, or in what kind of a proceeding, such forcible possession is taken; nor does it make any difference to the owner of the vessel, or to the public who may have taken passage in her, or laden her hold with goods for immediate transportation, whether the seizure and the interruption of her journey come from a revenue officer or a marshal. Whether done by the one or by the other, the act of each, the seizure itself, the forcible taking possession, is precisely the same in both cases.

The word "seizure" applies equally to both. It manifestly describes the one kind as aptly and as naturally as the other. In the act of 1881 there is no indication that the word "seizure" is not used in its general legal as well as popular sense. There is no evidence in the act itself of any intention to limit its application to seizures by one class of officers and in one kind of proceedings, and to exclude other seizures in other proceedings under title 34. No such distinction is made. Moreover, in passing this act, congress must be presumed to have been aware of the two different proceedings and modes of seizure

provided for by title 34, to which this act expressly refers; and in using language equally applicable to both without distinction, it must necessarily be presumed to have intended to include both. Nor can it be held that because there are two different proceedings in which a seizure by different officers may be made under title 34, there is, therefore, any ambiguity in the use of the word "seizure," or in its application. It might as well be claimed that ambiguity arises from the fact that there are numerous forfeitures and numerous penalties under various different sections of title 34, under which seizure or forfeiture might be had. The statute is expressly made to apply, not merely to a part, but to all cases arising under title 34. In truth, it is not any ambiguity in the word "seizure" itself that the libellant seeks to establish, but rather a restriction and a limitation of the statute of 1881, by implication—an exclusion of the application of the statute to one of the classes of cases in which a "seizure" is confessedly made; i. e., to all cases of seizure under section 3088. But as this section is among "the provisions of title 34," the statute of 1881 itself declares its application thereto; and to exclude that section from its operation by implication or "construction" would, in my judgment, be to nullify the act to that extent.

2. Again, the act of 1881 is manifestly a statute for the relief of innocent owners, and the equity and general purpose of the act apply as plainly to relief from penalties as to relief from forfeitures. There are many penalties enacted under title 34 for acts which could only be done with the full knowledge of the master. The vessel remains liable for all penalties imposed for such acts precisely as before. It is different with clandestine smuggling on the great lines of travel. In these cases the vessel, by sections 2867, 2868, 2873, 3088, might be held and seized either for penalties or for forfeitures for acts which the owners and master were powerless to prevent.

In cases of seizure for forfeiture, moreover, when the innocence of owners and master subsequently appeared, a release was a matter of course; but the temporary private vexation and public inconvenience arising from the interruptions of traffic and travel through such seizures, which sometimes happened at the moment of departure, were palpable hardships. The same annoyances and public inconveniences are liable to arise upon a seizure for penalties; and in prohibiting all seizures of vessels where owners and master are innocent, congress may have designed, not merely to relieve innocent ship-owners themselves, but also to avoid the public inconve-

niences arising from any unnecessary seizure and detention of vessels engaged upon the great highways of commerce and travel.

It is urged on the part of the libellant that it "does not seem reasonable and just to relieve the ship from the burden of the lien, and leave her master still liable for the penalties." But the penalties to which masters, though innocent, are made liable in the cases of smuggling are based upon necessary grounds of public policy, as *Story, J.*, has pointed out in the cases of *The Schooner Harmony,* 1 Gall. 128, and *The Schooner Industry,* 1 Gall. 114, to prevent collusion on the part of masters, and to insure vigilant watchfulness and integrity in the prompt interdiction of illegal traffic. These penalties have remained substantially the same through nearly the entire history of the government. Act March 2, 1799. But it was not until the act of July 18, 1866, so far as I can ascertain, that the ship also could be held for these penalties, or seized for their recovery. The liability of the master remains precisely as it has ever been since the act of March 2, 1799, resting upon the grounds of public necessity. Prior to 1866 the master's liability for all these penalties was deemed sufficient. The act of 1881, in relieving a common-carrier ship from liability for acts of which master and owners are innocent, as, in my judgment, it does, simply places the government in the same position in regard to penalties for such acts, and leaves it with the same rights and remedies, therefore, that it had held for 67 years prior to the act of 1866.

Congress might well consider that the old penalties to which masters still remain liable are sufficient to insure good faith and all that public policy demands, where it does not appear that either the owners or master were a consenting party or privy to the illegal acts; and that the additional liability of the vessel to seizure first imposed by the act of 1866, with the public or private inconveniences incident thereto in the case of innocent common carriers, shall not be longer imposed. And such, I think, was its intent.

3. Had it been intended by congress to give relief in cases of forfeiture only, the words "seizure or" in the act of 1881 would have been unnecessary. The word "forfeiture" alone would have been sufficient. There can be no seizure by revenue officers except where forfeiture is declared by statute. *The Missouri,* 3 Ben. 508. Seizure by them is merely the first step in proceedings for forfeiture, and whenever forfeiture is declared it is their duty to make seizure for that purpose. But if forfeiture is forbidden there can be no seizure

for the purposes of forfeiture. Hence the word "seizure," in the act of 1881, would be reduced to mere surplusage upon the construction contended for by the libellants, thus violating another maxim of interpretation that effect shall, if possible, be given to all the words of the statute. *U. S.* v. *Bassett,* 2 Story, 389.

The application of this maxim is the more imperative when, as in this case, both the words "seizure" and "forfeiture" have a natural and exact application to both the classes of cases found in title 34, to which the statute refers, viz.: the one to cases of strict forfeiture; the other to seizure, under section 3088, for penalties without forfeiture.

4. That such was the particular and special intent of congress in the act of 1881 is strongly sustained by a consideration of the analogous section of the Revised Statutes (3063) relating to vehicles used on land in transporting smuggled goods. By section 3062 any such vehicle or team is declared liable to "seizure and forfeiture;" but section 3063 declares that—

"No railway car or engine, or other vehicle, or team used by any person or corporation, as common carriers, * * * shall be subject to *forfeiture* by force of the provisions of this title, (34,) unless it shall appear that the owner, superintendent, or agent of the owner in charge thereof * * * was a consenting party or privy to such illegal importation or transportation."

This provision was originally a part of section 3 of the act of July 18, 1866, above referred to. The act of February 8, 1881, is manifestly modelled upon that section. Its language is almost identical, and could not have been framed except with the former act in view. Yet section 3063, relating to railway cars and other vehicles, it will be noticed, prohibits "forfeiture" only, though section 3062 provides for "seizure and forfeiture;" but as there can be no seizure by revenue officers for the purposes of forfeiture, if forfeiture itself is forbidden, there was no need in the prohibitory section relating to railway cars and other vehicles to use the word "seizure," since there was *no other existing legal liability* of land carriages to "seizure," except for the purposes of forfeiture under section 3062. The prohibition of "forfeiture" in the prohibitory section (3063) necessarily included a prohibition of seizure for the purposes of forfeiture; and, accordingly, we do not find the word "seizure" there used, as it was not necessary.

But, in the case of vessels, there is an additional liability to "seizure" for penalties, without forfeiture, which does not exist as regards land vehicles, and which would not be covered by the use of the word

"forfeiture" alone. The insertion of the additional words "seizure or," in the act of February 8, 1881, must, therefore, be held to have been intended to meet these additional cases of seizure under section 3088, which would not have been covered by the use of the word "forfeiture" only, since seizures, under that section, are the only cases for which the use of that word would be necessary.

5. If any doubt could still exist as to the intention of congress, it would be removed by a recurrence to the history of the act itself, as exhibited in the journals of congress, and to the times in which it was passed, to which, in cases of doubt, the supreme court have held that reference may be made. *Blake* v. *Nat. Bank*, 23 Wall. 307; *U. S.* v. *U. P. R. R.* 91 U. S. 74.

That complaints had long been made of the hardship of enforcing these penalties and forfeitures by the seizure of vessels of innocent owners is well known. A memorial numerously signed was addressed to congress in 1879, asking relief by the passage of an act therein proposed in the precise language of the statute of February 8, 1881, as finally passed. It was introduced into the senate on January 6, 1880, and, after reference to the finance committee, (Cong. Rec. vol. 10, pt. 1, p. 194,) was reported by them as bill 939, to which the memorial is attached, (Cong. Rec. vol. 10, pt. 1, p. 778;) was passed without amendment on March 8th, (Cong. Rec. vol 10, pt. 2, p. 1365,) and sent to the house of representatives. It was there referred to the committee on ways and means, (Cong. Rec. vol. 10, pt. 2, p. 1633,) who, on May 24, 1880, reported it with a recommendation of an amendment striking out the words "seizure or," whence it was referred to the committee of the whole. Cong. Rec. vol. 10, pt. 4, p. 3731. As thus modified it would have corresponded exactly to the section of the Revised Statutes (3063) relating to land carriages, and would not have covered the special liability of vessels to seizure for penalties only under section 3088.

The memorial, however, while making reference to the numerous sections of the Revised Statutes imposing penalties and forfeitures on vessels, called attention to forfeitures under section 2874, and complained particularly of section 3088 as "giving a lien on the vessel, which may be *seized* therefor." It is plain, therefore, that the amendment proposed by the committee of ways and means, to strike out the words "seizure or," and leaving cases of forfeiture only provided for, did not cover the ground desired by the memorialists. The report of that committee was disagreed to, and some nine months afterwards,

on February 7, 1881, on further recommendation of the committee withdrawing the proposed amendment, the bill was passed without amendment as originally prepared. Cong. Rec. vol. 11, pt. 2, p. 1521.

From this history of the progress of the bill to its passage it seems to me impossible to doubt that the words "seizure or" were not inserted as mere surplusage, or as a superfluous reference to the seizure which necessarily precedes a forfeiture; but that they were inserted *ex industria* for the very purpose of covering the liability of vessels to seizure for penalties under section 3088, as well as for forfeiture under other sections. It is at the same time a good illustration of the soundness of the legal maxim of interpretation above referred to, which requires that full effect shall be given to all the words of a statute or other written instruments, whenever there is subject-matter to which they may aptly refer.

It is urged by the libellant that the effect of the interpretation thus given to the act of 1881 will be to destroy the *lien* for penalties given by that act, and that if it had been the intention of congress to abolish that lien it would have been done by the use of other and more appropriate language than merely prohibiting "seizure." I do not perceive the force of this argument. Section 3088 does not use the word "lien." It provides that the vessel may be "held, seized, and proceeded against summarily by libel." Congress, in designing to exclude from this liability the vessels of innocent owners, might doubtless have declared that such vessel should not be "held, seized, or proceeded against by libel." But it is obvious, I think, that such amplification of prohibitory language is unnecessary as well as unusual. In enacting the prohibition, the use of either of the three important words in section 3088, either "holding," or "seizing," or "libelling," would have been sufficient. The word chosen in the act is the most significant of the three, the one which is most familiar and comprehensive, and which strikes most obviously at the root of the particular evil complained of, viz., the seizure of the vessel.

In support of the libellant's contention that only cases of forfeiture and of seizure for the purposes of forfeiture are intended by the act of 1881, it is urged that the words "seizure and forfeiture," in revenue law, have acquired a technical signification referring to the entire proceeding for the condemnation of forfeited property, in which proceeding seizure by the revenue officers is the first step; that the word "seizure," whenever used in title 34, means a seizure by reve-

nue officers for the purposes of forfeiture, save only in section 3088; and that the word "seizure" in the act of 1881 should, therefore, be interpreted according to this technical use, and according to its most common meaning in title 34. The title of this act, wherein the words "seizure and forfeiture" are conjoined, is also referred to in support of this view.

But it is well settled that the language of the title of an act is of little value, and cannot control the meaning of the body of the act. *Haddon* v. *The Collector*, 5 Wall. 105–110. The title of this act does present a case of possible ambiguity, because its grammatical reading will apply equally well to all cases of either seizure or forfeiture, disjunctively, or to the case of a technical "seizure and forfeiture" only. But in the body of the act, which is always controlling, there is no such ambiguity. Its language is not "seizure *and* forfeiture," but "seizure *or* forfeiture;" and the whole structure and reading of the act shows that these words were not there used in the technical manner contended for. And in the great majority of instances where "forfeitures" are enacted by title 34, the word "seizure" is not used in conjunction with it. Nor can I regard the argument, derived from the fact that the word "seizure" is used to signify a seizure for penalties in only *one* section of title 34, as of any force, when the very language of the act of 1881 is such as to make it applicable to every section of title 34. But, in fact, section 3088, through its relation to all penalties imposed upon masters, carries with it a reference to a much larger number of the sections of title 34 than those which refer to the technical cases of seizure and forfeiture only, as the latter sections are much less in number than those imposing penalties upon masters. Such criticisms, however, are of little value, and have no weight against the general and comprehensive language of a statute which affords relief in terms as naturally and justly applicable to the one class of cases as to the other.

Considering, therefore, the plain and comprehensive language of this act, the equity of the statute, and the general relief it was manifestly designed to afford, the analogous statute of relief in regard to land vehicles, and the insertion of the additional word "seizure" in the act of 1881, which would be requisite for no other cases than those of penalties; and considering the various steps in the passage of this act which forbid the supposition of the insertion of any unessential words,—I am of opinion that the act was designed to embrace seizures for penalties under section 3088, as well as for forfeitures.

A different opinion as to the application of this statute having been expressed by the attorney general, (April 28, 1881,) I have given the matter more careful consideration, and stated at greater length than I might otherwise have done the reasons that have constrained me to come to the conclusion I have reached.

The exceptions to the libel are, therefore, sustained.