Seward, J.
Appeal from probate court.
The plaintiff: seeks to sell the whole of the real estate to pay debts. It is claimed by Charles O. Wilson and William Wilson, who are children of James O. Wilson, that they are the owners of one-sixth, through their father, J. O. Wilson. William Gillies claims as a son of Marie Gillies, who was a sister of John D. Wilson. He claims the undivided one-sixth. John D. Wilson was the owner of the whole of the real estate. He was unmarried. He lived with his mother and two sisters, Cynthia Jane and Sarah Ann. His brother and sisters were: James A., who died in 1850; Maria Gillies, who left William Gillies; J. Adeline Wilson (deeded her interest to Jane and Sally) ; Evaline Buckingham died before 1850, leaving Laura Beatty, Emma Lewis and Caroline Buckingham (deeded Jane and Sally their interest); Jane and Sally.
John D. died in the ’50’s. So that Jane and Sally inherited one-sixth from him, and each of the others inherited one-sixth.
*490 Iiis brother, James A., died, prior to 1850, leaving one son, James Orlando, who died in 1879, leaving Pauline, his widow, and the defendants, William and Charles 0., both of whom inherited one-sixth subject to the dower interest of their mother.
Cynthia Jane and Sarah Ann continued to live in and occupy the premises with their mother until her death, after which they lived there alone until their death; one of them died in 1904 and the other in 1906, testate, bequeathing to Laura Beatty and Catherine Wilson each $100, and the remainder, after paying debts, to the First Presbyterian ■ Church. There are debts to the amount of $600.
The reply sets up title (1) by .adverse possession; (2) by proceedings by Cynthia Jane and Sarah Ann, in 1884, in this court, to quiet title.
So the question is as to the ownership at the death of these two women of .the two-thirds of the real estate, or rather as to whether they owned it.
At the death of John D., this real estate vested in his sisters and James Orlando, the son of James A., who died prior to his death, and they became tenants in common in the following proportions: Cynthia Jane, one-sixth; Sarah Ann, one-sixth; J. Adaline, one-sixth, deeded to Jane and Sally, 1866; Laura Beatty, one-eighteenth, Emma Lewis, one-eighteenth, Caroline Buckingham, one-eighteenth, deeded to Jane and Sally, 1866; Marie Gillies, one-sixth; James O. Wilson, one-sixth.
The claim of the church and the plaintiff is that Ms testators’ acquired title by adverse possession; while the defendants, Gillies, James O. Wilson, William Wilson and Pauline A. Wilson, widow, claim that their title has not been extinguished by adverse possession, as they were tenants in common.
It .is well settled in Ohio that the occupancy by one tenant of the common premises, however long continued, is no evidence of the ouster of a co-tenant. There must be some overt act.
What acts are claimed to work .a disseizin? The claimants occupied the property from 1850 to the date of their deaths; put some repairs upon it, such as roofing and painting house, building fence; and sold a piece to Walter Coffman, making a warranty deed. The repairs put upon the house I consider as *491 of little consequence, as that might be readily referable to the convenience and comfortableness of their occupancy.
They brought a suit in September, 1884, case No. 3928, against John D. Wilson if living, and against his unknown heirs if he be dead, alleging that they were- in actual possession of the real estate, that the defendants, the unknown heirs of John D. Wilson, or John D. Wilson if he be living, claim, or may claim, an estate or interest therein adverse to the plaintiffs’ right; and praying that defendants may be compelled to disclose their said interest, so claimed by them; and that the same may be adjudged to be null and void, and plaintiffs’ title quieted. This suit I might say was brought by Gibson Atherton.
Publication was made, and proof of publication was filed. It is claimed the affidavit for publication was fatally defective, and the court was, therefore, without jurisdiction to render the judgment quieting title. The affidavit is as follows:
Cynthia Jane Wilson, being duly sworn, eays: That she is about to commence suit against the unknown heirs of John D. Wilson, deceased, and against -the said AWlson if living, the object and prayer of which is to quiet title of herself and co-plaintiff, Sarah Ann Wilson, to lots 512 and 513 * * * against'any claim.or interest therein of the unknown heirs of John D. Wilson, deceased, or .of the said John D. Wilson if living, and that the said defendants claim, or may claim, an interest therein adverse to the interest of the plaintiffs, who are the owners and in possession of said realty. She says that service of a summons can not be made in this state on the defendants, or either of them, and that the names and residences of the heirs of John D. Wilson are unknown to plaintiffs, and that said heirs are necessary parties to the cause, and this cause of action is one of those mentioned in Section 5048 of the Revised Statutes of Ohio, and that the residence of John D. Wilson, if living, is unknown to affiant, and can not with reasonable diligence be ascertained. Sworn to October 23, 1884.
It is claimed that there has been a failure to comply with Section 5084, ■ stating that the party who makes the service, his agent or attorney, shall, before hearing, malm and file an affidavit *492 that the residence of the defendant is unknown, and can not, with reasonable diligence, be ascertained.
Section 5048 then (now 5045) provided in what kind of proceedings publication could be made, and' the last subdivision provided that when the residence of the defendant is unknown, it must be so stated * * * and in all other cases the party who makes the service # * * shall file an affidavit that the residence is unknown. This requirement has been complied with as to John D. Wilson, and the section applies to him.
Section 5053 provides for unknown heirs, and it appears that its provisions were strictly complied with as to unknown heirs.
But whether the plaintiffs’ title was quieted in that action, or the defendants’ title extinguished by reason of the decree, the court does not .think .of much importance, in the view the court takes of the matter involved in the case at bar.
The important question is: did the acts and conduct of the plaintiffs in that action start the statute of limitations to running against their co-tenants?
It is claimed that the affiant knew that these claimants resided in Ohio, and knew who they were, and that her affidavit did not speak the truth; in fact, stated an untruth. While the court is of the opinion that these proceedings can not be collaterally attacked, yet the court’s decision is not based upon the validity of the decree rendered in that case.
In Young v. Hefner, 36 O. S., 232, at 236, it is held: That to constitute disseizin, there must be an overt act, of an unequivocal character, clearly indicating an assertion of ownership of the entire premises, to the denial and exclusion of the rights of the claimant.
In this case, James H. and Barton Young were brothers, tenants in common of a farm. James H. left for Texas, in 1835, leaving Barton in possession, who continued to cultivate the fairm for the benefit of. both. James IT. was unheard of for more than thirty years, prior to 1863. Barton died, leaving his family in possession; ITefner bought the interest in 1863, a brother of James II. brought partition proceedings in the presumption that he was dead; the land was sold to Hefner in 1875; James IT. Young returned in 1875, and brought suit to recover.
*493 The Supreme Court held that previous to the partition suit, the tenancy had been avowedly in common, but that thereafter the possession was adverse, although James H. Young had no actual notice; but the statute had only run twelve years, and the court held with the plaintiff.
The Supreme Court has held, in construing Section 4977 (the twenty-one year limitation), that ian open, notorious, exclusive and adverse possession • of land for twenty-one years, with or without color of title, whether continuous in the first possession or tolled in person claiming under him, and whether with or without knowledge of the existence of a better title, confers upon the original possessor, or those claiming under him, an indefeasible title in fee. 22 O. S., 32, 37; 8 O., 159; 17 O. S., 130.
I shall disregard the question as to whether the proceedings by Cynthia Jane and Sarah Ann, in case No. 3928, to quiet title, were effective for that purpose or not, and will look at the question from the viewpoint as -to whether their acts and conduct in relation to the real estate were- of such a character as to start the statute to running.
I do not believe that any act of theirs, prior to the bringing of this suit, was sufficient to start the statute -to running or work a disseizin. I am of the opinion that up to that time they stood in relation to the heirs of John D. Wilson as tenants in common. True they had occupied the premises exclusively; paid the taxes and repairs. These things they could be expected to do, and are referable, to what might be expected of them. But in 1884 they commence the suit; put themselves in an attitude of open hostility to their co-tenants; they assume a defiant attitude as to their title; ask that whatever claim they may be able to disclose may be adjudged null and void; and Cynthia Jane makes an affidavit for publication, reciting thait the object of the proceedings is to quiet the title of herself and sister, against any claim or interest of the defendants.
These were acts of open hostility, made in a court of competent jurisdiction, in a public manner, after having occupied the property for a great' number of years, with an intention to challenge the rights of the defendants.
*494 It is presumed that these defendants who are now claiming the title knew that John D. was presumed to be dead at and before this time and of their rights in the property. Maria Gillies and one of the Wilson boys had visited these women here in the city.
The case of Elder et al v. McClaskey et al, 9 Fed., 325, is a well considered and most interesting and instructive ease upon the questions involved in this case. That case involved 164 acres of land on Price Hill, Cincinnati.
The facts pertinent to the issues in that case, briefly, were: that Ephnain Morgan and Lot Pugh, in 1838, purchased and took a deed for the land from Marie Bigelow, who it was thought held a fee simple title, but whose title, after litigation, was determined to be a life estate only, the remainder in fee being in the brothei-s and sisters of her grandfather, who had devised 'the life estate to her. Pugh conveyed to Morgan. Morgan procured conveyances from a large number, but not all of those in whom the fee simple had lodged upon the death of the only child of Maria. Morgan finding his title defective -as to an undivided portion, in 1847 filed a bill -making the direct descendants of devisees of William Barr parties. He stated in his bill that he was in possession of the land -and held the legal title to it and was entitled to full and perfect enjoyment. The bill was dismissed without prejudice, because prematurely brought, before -the death of the life-tenant. In 18.58 he and others filed a petition to perpetuate the testimony of the life-tenant, Maria Bigelow, to be used in a suit which they alleged they feared would be. brought against them after her death. After the expiration of more than twenty-six years, suits were instituted, calling in question the title of Morgan and his grantees to the portion Morgan had not acquired by deed. The question -of the character of Morgan’s occupancy, and his conduct and acts in relation to the real estate, were considered by the court. At pages 330 and 331, the court say:
“In 1847 Morgan filed a bill in chancery against the direct descendants and devisees of AVilliam Barr, Sr., -to remove the cloud on his title to this quarter section which he averred was *495 created by the defendant’s claim that, under William Barr, Sr. ’s, will and the statute,- the remainder in the land had passed to the son-in-law or -direct descendants of the testator. He stated in his bill that he was -in the possession of .the land and held the legal title to it, as ‘he believed, and was entitled to the full and perfect enjoyment of it. He further showed that he had .at various times purchased the interests and claims of the brothers -and sisters of William Barr, Sr., and their heirs in and to the said quarter section by deecls recorded. He recited also his various conveyances of parts of the land by deeds of general warranty. The bill was dismissed without prejudice on the ground that it was prematurely filed before the death of -the life-tenant, the possession and title of whose grantee during her life was not disputed.
“In June, 1858, Morgan and his grantees filed a petition under the Ohio Statutes against the same defendants and some others to perpetuate the testimony of Maria Bigelow to be used in -a suit which, as they averred, they feared would be brought against them on her death. In the petition Morgan alleged that after acquiring the life estate of Maria Bigelow, he had purchased the interests of ‘nearly dll’ the brothers and sisters of William Barr, Sr., and their heirs; that for the purpose of sustaining the title under which petitioners claimed it was necessary to perpetuate the evidence of Mrs. Bigelow as to the relative dates of the death of Mary Jane Barr and her father, and the relationship of the various persons from whom Morgan had secured deeds to the brothers and sisters of William Barr, Sr. The answer to the bill in the present suit of the defendants in possession which was required to be under oath and is therefore evidence in the -cause against complainants avers that the small outstanding interests not purchased by Morgan and referred to by implication in'the phrase ‘nearly all’ in the foregoing petition were only those of the children of William Barr, Jr., and Mary Barr, his wife, who were cousins. The cross-bill of the defendants, not in possession, charges -that these words were intended to have the same meaning. Mary B.arr was the daughter of William Barr, Sr., and as such entitled to one-third of the land if it went to his direct descendants. William Barr was the son-in-law. and a devisee of YTlliam B.arr, Sr., and as such entitled; to one-third of the land, if it vested by the will in the three sons-in-law. But this William Barr was a son and heir of Samuel Barr, a brother of William Barr, Sr., and .as such entitled to a comparatively small share in the land if it vested in -the brothers and sisters of William Barr, Sr. Morgan could not buy this interest because .it was *496 disavowed by those entitled, who claimed to take not through Samuel Barr, but as the direct devisees of the testator.”
The Circuit Court of Appeals, at pages 334 and 335 say:
“In view of the lapse of time between the accruing of the right of possession .and the bringing of the action, the only question for our consideration on this branch of the case is whether the possession of the defendants in possession was adverse to the title and claim of the complainants and cross-complainants. For brevity, we shall hereafter refer to the defendants in possession as defendants, and to the complainants and cross-complainants as claimants.
‘' The conclusion of the circuit court that the statute of limitations created no bar to claimants’ action was based on these three propositions:
“First. That the defendants had entered the land in subserviency to the title of the heirs of the brothers and sisters of William Barr, Sr., and, therefore, as tenants in common of the fee with the claimants who were some of such heirs.
“Second. That a possession begun by defendants as tenants in common with claimants could not become adverse so as to set the statute running until actual notice of the intent to disseize them was brought home to the claimants, and no such notice was shown in this case.
“Third. That even if the original entry by defendants had been adverse, or it had become so by actual disseizin, yet the disseizin was purged by acts of the defendants which were in law and in fact an acknowledgment of the validity of the title of claimants and conclusively showed an intention thereafter to hold under it.
“We propose to. examine these propositions in their order and to consider their application to the case at bar. When a tenant in common, claiming as such, enters upon the common land, he is exercising the right which his title gives him and his resulting possession is presumed to be consistent with his avowed title and therefore to be the possession of his co-tenants and himself. ITis co-tenants have the right to rely on this presumption until his acts or declarations are palpably inconsistent with it. The law fully recognizes that he may oust them, but he can not do so except by acts so distinctly hostile to the rights of his co-tenants that his intention to disseize them is unmistakable. Notice of this intention must be brought home to his co-tenants, but whether this must be actual or may be constructive, it is not necessary at this point to discuss. It suffices for our present purpose to say that the rule thus stated has no application *497 to any case except where the possession of the person in question was avowedly begun as a tenant in common or under a deed which defined his title as such.”
Morgan had been defendant in an ejectment suit. At pages 338, 339 and 340, the court say:
“He gave a mortgage on his homestead a month after Mrs. Bigelow’s-death and three more covering parts of the tracts in the following two years covenanting that his title was clear, free and unincumbered.
“He was made defendant in an ejectment suit brought by an heir of the brothers and sisters of Willian Barr, Sr., in 1863, more than twenty-one years -before -the bringing of this suit to recover the -entire tract, and pleaded not guilty. He bought the title of this heir and others of the same branch after it was settled by litigation, reciting that he was holding adversarily. He sold five acres in 1867 and three more in the same year with deed of general warranty. He sold six acres with a like deed in 1869, and in 1873 he died in the house he had built upon the tract and occupied for forty-four years. His house and the remaining eight -acres were sold under judicial proceedings, and a deed in fee executed to the purchaser, who holds it to this day. Entering as he did under a claim to the fee of the tract in severalty, under deeds which purported to give such title, we are of opinion that his possession was never in privity with claimants as their tenants in common or in subordination to them.
“Second. But even if we were to concede that the tenancy of defendants and those under whom they claim was begun as tenants in common with claimants, we can not agree with the court below in the view that the facts shown in this record were not sufficiently brought home to the claimants to constitute a disseizin, and to set the statute running. Where one enters avowedly as tenant in common with others, his possession is the possession of those others so long as the tenancy in common is not openly disavowed. Before adverse possession by one tenant in common against another can begin, -the one in possession must, by acts of the most open and notorious character, clearly show -to the world and to all having occasion to -observe the condition and occupancy of the property that his possession is intended to exclude and does exclude the rights of his co-tenant. It is not necessary for him to give actual notice of this ouster or disseizing of his co-tenant to him. He must, in the language *498 of the authorities, ‘bring it home’ to his co-tenant. But he may-do this by conduct, the implication of which can not escape the notice of the world about him or anyone, though not a resident in the neighborhood, who has an interest in the property and exercises that degree of attention in respect to what is his, that the law presumes in every owner. Said Mr. Justice Bradley in Broderick’s Will, 21 Wall., 503, 519: ‘Parties can not by their seclusion from the means of information, claim exemption from the laws that control human affiairs and set up a right to open up all transactions of the past. The world must move on, and those who claim an interest in persons and things must be charged with the knowledge of their status and condition and of the vicissitudes to which they are subject.’
“There are some authorities in which language is used indicating that before a tenant in common can hold adversely to his co-tenants, he must prove that his co-tenants had actual knowledge of his, intention to assume exclusive possession, but it will be found that the language was not necessary to the decision of the cases under consideration. Such a ease is Chandler v. Ricker, 14 Vt., 128. By the overwhelming weight of authority, however, actual notice it not necessary, and acts public and notorious, and of such a character as to leave no doubt to anyone observing that exclusive right of enjoyment against everyone is asserted by the holder are quite sufficient to bring home notice of ouster to the tenants in common. Such is the law of Ohio. In Hogg v. Beerman, 41 O. S., 81, 99, the court states the rule as to the adverse possession of one who entered under a deed conferring title as- a tenant in common, as follows: ‘ ITe had full right to so enter. Having, so entered, his possession continued referable to that deed; continued to be that of one tenant in common, until by unmistakable acts of which his co-tenants had notice, or of tvhich it was their duly to take notice, he disclaimed to hold as a tenant in common, and asserted ownership of the entire estate.’ ” .
It is claimed that the' defendants are not affected by the proceeding instituted by Cynthia Jane and Sarah Ann, because not notified, and because it is claimed the proceedings were void.
At page 341 and 342, 9 Fed., the court say:
“The statute, therefore, does not begin to operate until the possession, before consistent with the title of the real owner, becomes tortious and wrongful by the disloyal acts of the tenant, which must be open, continued and notorious, so as to preclude *499 all doubt as to the character of the holding, or the want of knowledge on the part of the owner.
“All that the court meant here to say was that the evidence of the intention on the part of the tenant in possession to disseize the owner must be of such open, notorious, distinct and unmistakable character that the owner must have known of the disseizin if he exercised the slightest care with respect to his property. This is clearly shown by the decision of the same court in the term previous, in Clymer v. Dawkins, 3d. Howard, 674, in which unlike Zeller’s Lessee v. Eckert, the question whether constructive notice of disseizin was sufficient as between tenants in common did arise and had to be decided. In that case, three tenants in common held 7,000 acres in Kentucky. Two of them, without knowledge of the third, who lived in another state, instituted partition proceedings in a court of Kentucky and the tract was divided .and the two complainants entered in possession in severalty of the parts allotted to them respectively. The partition proceedings were defective because not in compliance with the statute and were claimed to be void. The period of limitation, after the partition proceedings, expired before the third owner brought suit in ejectment against his co-tenants. He was held to be, barred on the ground that possession of his co-tenants became' adverse from and after the defective partition proceedings.’’ ’
At pages 343 and 344, the court say:
“If a tenant in common in order to make his possession adverse to a co-tenant is obliged to seek the latter out and actually inform him of his intention, then it would become impossible to set the statute running against absent heirs whose existence and whereabouts were unknown to the tenant and whose heirship and interest in .the property were unknown to themselves. It is certainly the policy of the law to require claims which have been latent for many years to slumber on.
“In the light of these principles we think that but one conclusion can be reached as to the adverse character of the possession of the defendants in that ease from August 3, 1860, until this suit was brought. The bill to quiet title filed in ]847 by Morgan, Considine and others, was then still on record in the Common Pleas Court of Hamilton County in which he and they asserted ownership ■ in fee in the lands in dispute. It is true that by .the petition to perpetuate testimony filed in 1853, Morgan and his grantees admitted a small outstanding interest in the heirs of Samuel Barr, but the same public records which *500 showed this would also show deeds and mortgages executed both before and after the filing of the petition which asserted an exclusive ownership in fee by the possessors in the entire tract.”
It is claimed that proceedings in case No. 3928 were defective and void.
At page 342, quoting from 3 Howard, 674, Justice Story says, in relation to defective proceedings in such case:
1 ‘ In our judgment, it is wholly unnecessary to decide whether those proceedings (i. e., the partition) were absolutely void or not; for assuming them to have been defective or invalid still as they were matter of public notoriety, of which Clymer was bound at his peril to take notice, and as Lynch and Blanton under those proceedings claimed an exclusive title to the land assigned to them adversely to Clymer; if the defendants entered under that exclusive title the possession must be deemed adverse in point of law to that of Clymer. It is true that the entry and possession of one tenant in common of and into the land held in common is ordinarily deemed the entry and possession of all the tenants; and this presumption will prevail in favor of all until some notorious act of ouster or adverse possession by the party so entering into possession is brought home to the knowledge or notice of the others. When this occurs the possession is from that period treated as adverse to the other tenants, and it will afterwards be as operative against them as if the party had entered under an adverse title. Now said notorious ouster or adverse possession may be by overt act in pais of which other tenants' have due notice, or by the assertion in any proceedings at law of a several and distinct claim or title to an entirely of the whole land, or, as in the present case, of a several and distinct title to the entirety of the whole of the tenant’s purparty under a partition which, in contemplation of law, is Icnoitm to the other tenants.”
It is conceded in argument that the statute would run under the circumstances of this case in favor of a purchaser, but that the same principle would not apply to the church, because it takes by devise; that the testatrices could not invoke the statute. But, as I have said, the Supreme Court has held that a title acquired by adverse possession is indefeasible. Now, what is an indefeasible title? It is one incapable of being defeated, set aside or made void.
C. C. Worry, for plaintiff.
Kibler & Montgomery, for the First Presbyterian Church of Newark.
Flory & Flory and B. M. Ochiltree, for defendants.
So that if these ladies held by adverse possession, and thus acquired a title which they could convey by deed, and this title was indefeasible, then it was good in them for all purposes, and the wall which such a possession threw around them and their title became impregnable after twenty-one years from the time the statute commenced to run in 1884.
The character of the possession of these two women,.their acts and conduct in relation to this real estate, were of such a nature as to be adverse to their co-tenants, as shown by the proceedings in case No. 3928. These co-tenants’ rights vested upon the death of John D. Wilson, thirty-four years before they brought suit to quiet title. It is fair to presume that they, during that period, knew that they had some interest in the real estate. As I have said, Maria Gillies visited her sisters. The testimony does not disclose that she was affectionately received, But that very fact but tends to weaken her claim. One of the Wilson boys visited them. Correspondence was kept up. They were bound to take some notice of what was going on in the world, especially in matters where their interests were at stake:
A decree will be entered for the plaintiff.