## Case No. 15,784.

UNITED STATES v. MISSISSIPPI, ETC., BOOM CO.

[See 3 Fed. 552.]

## Case No. 15,785.

UNITED STATES v. The MISSOURI.

[9 Blatchf. 433; [1] 15 Int. Rev. Rec. 74.]

Circuit Court, E. D. New York.  Feb. 23, 1872. [2]

PENALTIES—HOW RECOVERED—MANIFEST OF CARGO—SCIENTER.

1. Under section 8 of the act of July 18th, 1866 (14 Stat. 180), which declares that a vessel shall be holden for the payment of the penalty imposed upon her master by section 24 of the act of March 2d, 1799 (1 Stat. 646), where goods are brought into the United States by her, which are not included or described in the manifest of her cargo, the vessel may be proceeded against in rem, in the admiralty, to enforce such lien against her.

[Cited in The Helvetia, Case No. 6,345; The Joshua Seviness, Id. 7,549; Pollock v. The Sea Bird, 3 Fed. 575; The Sidonian, 38 Fed. 442; The C. G. White, 12 C. C. A. 314, 64 Fed. 581.]

2. The manifest of the cargo of such vessel, filed in the custom house, is competent evidence on the question as to whether such goods were entered on the manifest of her cargo.

3. It is not necessary to the liability of the master to such penalty, that it should appear he had knowledge that the goods were on board of the vessel.

4. If the absence of such knowledge is to be of avail, it must be proved as a defence.

[Appeal from the district court of the United States for the Eastern district of New York.]

[The steamer Missouri was libelled in a proceeding in rem, under the 8th section of the act of July 18, 1866, to recover the sum of $2,998 due to the United States from the master or person in charge of said vessel, as a penalty for bringing into the United States from a foreign port a quantity of cigars valued at the sum named and not included in the manifest of said vessel, in violation of the 24th section of the act of March 2, 1799.  Decisions in favor of the United States were rendered by Judge Benedict, in the district court, upon exceptions filed and upon the trial of the action.  The Missouri [Cases Nos. 9,-652 and 9,653].[3]

John J. Allen, Asst. Dist. Atty.
Goodrich & Wheeler for claimants.

WOODRUFF, Circuit Judge.  There is, I think, some doubt, whether the act of July 18th, 1866, § 8 (14 Stat. 180), which declares, that the vessel shall be holden for the payment of the penalty imposed upon the master (where goods are imported or brought into the United States, which shall not be included or described in the manifest of the cargo) by the act of March 2d, 1799, § 24 (1 Stat.

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]
[2] [Affirming Case No. 9,653.]
[3] [From 15 Int. Rev. Rec. 74.]

646), authorizes a proceeding in admiralty for the enforcement of the lien thereby declared. Its language is, that "such vessel * * * may be seized and proceeded against summarily, by libel, to recover such penalty, in any district court of the United States having jurisdiction of the offence." The use of the term "libel," in the act, is not claimed to be conclusive. Indeed, the proceeding in this case is, in very form of words, an information, which is apt to indicate a proceeding to enforce a forfeiture based upon a seizure under the revenue laws of the United States; and, in these proceedings, it is styled, a "libel of information." It is plausibly argued, that the act which gives the United States the right to hold the vessel for the payment of the penalty imposed on the master, contemplates a seizure in the first instance and a libel founded thereon; that such a proceeding is a proceeding at law, in which the owners are entitled to a trial by jury; that the very basis of the proceeding is, that the master has incurred a penalty; that, for the recovery of such a penalty, an action at law, to be tried by a jury, would be necessary; that the proceeding can only be conducted in the district court having jurisdiction of the "offence"; that the master could only be pursued at law for the penalty of the offence; and that it ought not to be deemed the intention of the legislature to authorize a proceeding against the vessel in a form which deprives the owners of that mode of trial. To hold, therefore, that, under the act, a seizure was necessary in the first instance, and that the act contemplated a libel of the vessel so seized, and an intervention and issue thereupon at law, to be tried by a jury, as in ordinary seizures under the revenue laws, would do no violence to the statute. But, upon reflection, my conclusion is in accordance with the opinion of the district judge upon this point. The Missouri [Case No. 9,652].—and with that of Judge Blatchford in the case of U. S. v. The Queen [Id. 16,107].

The facts seem to me established in conformity with the claim of the libellants. More than 200 boxes of cigars were brought into the United States, on board of the steamship Missouri, which were not entered on the manifest of the cargo, but were found secreted on board. The intent to introduce them clandestinely, without the payment of duties, was plainly indicated by the circumstances.

The objections to the evidence by which the facts are established are untenable. The manifest, and only manifest, of the cargo filed in the custom house, is either proof that these goods were not on the manifest of the cargo, or that no part of the cargo was entered upon any manifest; for, the proof is, that no other manifest was filed.

The officers who found the cigars testify to the fact, and they identify and prove the original entry of such finding, and the seizure of the cigars thereupon; whether as official documents, or contemporaneous memoranda made by the witnesses, which they verify, is immaterial. It is enough that they are entries subscribed by them, in the discharge of their official duty, to the truth of which they now testify. All certificates of seizure not established by express proof, the district court rejected, and, in consequence, a large quantity of cigars mentioned in the libel were not included in the estimate of value awarded in this case.

A decision of the circuit court in the Third circuit—U. S. v. The Stadacona [Case No. 16,371]—is cited to me, which seems to proceed upon this construction of the statutes—that, in order to charge the master of the ship with the penalty imposed by the act of 1799, it must appear that he had knowledge that the goods were on board of the ship. It would, of course, follow, that if the master is not liable to the penalty, the vessel cannot be charged, under the act of 1866. In the opinion, it is, nevertheless, declared, that the goods were properly condemned and forfeited. It would be possible to suggest, that the precise circumstances mentioned in the act of 1799, which create the forfeiture of the goods, are accompanied by the declaration, that the master shall forfeit and pay a sum equal to the value, and it is not entirely obvious that one of these forfeitures is incurred if the other is not also. But, if the decision of the circuit court was correct in that case, it will not avail the claimants in this. There, it was proved, that the steward of the vessel had, without the knowledge of the master, secreted on board certain pieces of silk, in a place which was boarded up and covered with tin. The space thus inclosed was apparently wholly inaccessible, and the master was not aware that it had ever been opened. It was, therefore, deemed by the court impossible for the master to enter the goods upon the manifest, when he had no knowledge that they were on board, and could not, by the exercise of any ordinary diligence, have obtained such knowledge; and the court, not without much reason, founded in a sense of justice to the master, deemed, upon a construction of the whole act, that goods so secreted were not a part of the cargo, in such a sense that the master was punishable if he did not enter them on the manifest. I greatly doubt that the court intended to adopt the broad proposition, that a master could, in all cases, protect himself from the penalty, and save the vessel from liability, by proof that he had not actual knowledge that the goods were on board. Such a construction of the act would go far to destroy its efficiency for any purpose. But, even such a construction would not avail in this case. It would be necessary to hold, not only that want of knowledge by the master would save him and the vessel from the forfeiture imposed by the act, but to hold, also, that the libellants must affirmatively prove such knowledge. This, it is

certain, I think, cannot be required. If want of knowledge will avail, it must, under these statutes, although a negative, be proved as a defence. The statute makes no qualification. It declares, that, if the goods are imported or brought in, and do not appear in the manifest, the forfeiture is incurred. It is a presumption, upon which the statute manifestly proceeds, that the master has entire control of the vessel and its lading; that he has power to exclude all goods which are not properly brought and subjected to entry on the ship's papers; and that he is to be presumed to know what goods are on board his ship; and, if we admit that he may, in a case such as that referred to, show that his apparent power was evaded and his presumptive knowledge avoided, and that the goods were secretly gotten on board and brought, by a fraud or deception practised on himself, which no ordinary vigilance would prevent, the government may, nevertheless, proceed, in the first instance, upon the fact, that the goods were brought, and put him, or the owners of the vessel, to an explanation. In the present case, the goods were of very considerable bulk; they were deposited in not less than five or six different places on board; they could, apparently, have been discovered by very little diligence in examining the ship; and they were very readily found by the officers of the revenue. Surely, this was sufficient to put the owners of the vessel to some explanation; and they might have examined the master himself, if he could testify to any want of knowledge that the goods were on board. As the case stands, the proof is, that the goods were imported without entry on the manifest, and the inference is warranted that the master knew it.

But, the provisions of the act of 1799 itself seem to me to reach this precise question. The proviso to the imposition of the forfeiture (section 24) permits the master to show that the omission to enter the goods in the manifest is by mistake—that is, that the "manifest is incorrect by mistake." If, then, on arrival, goods are discovered which have been brought by seamen or others without his knowledge, so that his manifest was made in good faith, in the belief that it contained all dutiable goods, and his mistake therein is shown to be caused by a deceit and fraud practiced on himself, he is to make that fact appear to the collector, naval officer and surveyor, or a major part of them, and, in such case, the forfeiture is not incurred.

I do not think it necessary to pursue the discussion into the other details of the argument in behalf of the claimants. In respect to those, so far as is material to the conclusion, I concur in the decision made in the district court. The libellants must, therefore, have a decree for the amount awarded below, with costs.

UNITED STATES v. The MISSOURI. See Case No. 9,652.