## Case No. 16,108.

UNITED STATES v. The QUEEN.

[11 Blatchf. 416;[1] 19 Int. Rev. Rec. 14.]

Circuit Court, S. D. New York. Dec. 24, 1873.[2]

SMUGGLING—INFORMATION OF FORFEITURE—PROSECUTION OF MASTER—KNOWLEDGE OF MASTER.

1. Under sections 23 and 24 of the act of March 2, 1799, (1 Stat. 645, 646,) and sections 8 and 25 of the act of July 18, 1866, (14 Stat. 180, 184,) the United States may proceed in rem, against a vessel, to recover a penalty for importing or bringing goods into the United States, which are not included or described in the manifest, according to the course of proceeding in a cause in admiralty, and may proceed against the vessel immediately and directly, without the delay incident to the previous prosecution of the master of the vessel, to recover such penalty.

[Cited in Pollock v. The Sea Bird, 3 Fed. 575. Followed in The Paolina S., 11 Fed. 174. Cited in The Sidonian, 38 Fed. 442.]

2. Where a suit in admiralty is brought against such vessel and her master jointly, to recover such penalty, it is proper to dismiss the suit as to the master, on the ground that he is entitled to a trial by jury, and to proceed with it as against the vessel.

[Cited in Hatch v. The Boston, 3 Fed. 809.]

3. In such a suit, proof that the master of the vessel had no actual knowledge that the goods were on board is not sufficient to exempt the vessel from liability.

[Cited in U. S. v. Curtis, 16 Fed. 189.]

[Appeal from the district court of the United States for the Southern district of New York.]

[This was an information of forfeiture against the steamship Queen for alleged violation of the revenue laws. On appeal from the district court. See Case No. 16,107.]

Thomas Simons, Asst. U. S. Dist. Atty.

Charles Donohue, for claimants.

WOODRUFF, Circuit Judge. The decision of this court in U. S. v. The Missouri [Case No. 15,785], must be taken as settling, in this court, that the proceedings herein were rightly prosecuted in the court below as a cause in admiralty, and according to the course of proceeding in such a cause. The case of Union Ins. Co. v. U. S., 6 Wall. [73 U. S.] 759, 764, sustains the jurisdiction, and approves that course of proceeding.

I think it clear that the government, under the acts of March 2, 1799, and July 18, 1866, (1 Stat. 645, 646, §§ 23, 24; 14 Stat. 180, 184, §§ 8, 25,) are at liberty to proceed against the vessel immediately and directly, without the delay incident to a previous prosecution of the master, to recover the penalty for importing or bringing goods into the United States, which are not included or described in the manifest. The extension of the act of 1799 to foreign vessels would, in general, prove idle and fruitless, if they could not be proceeded against before such a recovery. At the termination of a suit against the master the vessel would not be here. The purpose to charge the vessel with the penalty, and the express declaration, not only that the vessel "shall be holden for the payment," but that she "may be seized and proceeded against summarily," both indicate an intent that she may be proceeded against so soon as the violation of the law appears.

The amendment of the proceedings by discharging the master, on the claim that he was entitled to a trial by jury, was not erroneous. Courts of admiralty have a large discretion to amend their proceedings and conform them to the justice of the case before them; and the correction of the supposed error in including the master in the same suit wrought no injustice to the claimants. On the contrary, had the technical objection that the libellants, having erroneously joined the master, were concluded, been suffered to prevail, the vessel would have wholly escaped the liability which the statute imposed upon her.

On the merits, I must adhere to the observations made on deciding the case of U. S. v. The Missouri, above referred to. I do not think that the acts above referred to can be made practically useless and inefficient for the purposes of their enactment, by a construction which makes proof that the master had no actual knowledge that the goods were on board sufficient to exempt him from the penalty and the vessel from any responsibility. The averment made by an amend-

---

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

[2] [Affirming Case No. 16,107.]

ment of the answer allowed in this court, that the master had no means of knowledge of the importation, was not sustained by any evidence. The case stands on the naked statement of the master, that he "did not know of the goods on board and not on the manifest." This language is itself equivocal. It may mean that, although he knew that the goods were on board, he did not know that they were not on the manifest. To this it is sufficient to say, it was his duty to see that they were on the manifest. But, taking the testimony to mean distinctly that he did not know that the goods were on board the vessel, that is not enough, in my opinion, to exempt the vessel from liability. If it were to be so held, the door to smuggling would be open so wide that these statutes would be a dead letter.

If it be conceded, that, when, notwithstanding a faithful exercise of his authority and control over the lading of his ship, and his right to exclude all goods not subjected to entry upon the ship's papers, parcels were fraudulently concealed, so that he could not discover them in person, nor by the aid of his subordinates, the penalty could not be enforced against him, (see U. S. v. The Stadacona [Case No. 16,371]), even that concession would not avail in this case. The custom house officers had no difficulty in finding these goods. And, as suggested by the court, in the case of U. S. v. The Missouri, if the manifest was made and filed in good faith, without knowledge that the goods were on board, the master is furnished, by the act of 1799 (section 24), with an opportunity to correct the mistake, by showing that the defect in the manifest was owing to a deceit and fraud practised on himself. Any other construction of the act would relieve the master and the vessel from liability, although every officer on board except the master knew that the goods were on board, and were parties to the attempt to introduce them in violation of law.

The libellants are entitled to a decree, with costs. [Case No. 16,107.]