## UNITED STATES v. CURTIS.

*(District Court, S. D. New York. April 10, 1883.)*

1. PENALTIES AND FORFEITURES—INTENT—REV. ST. § 2873—SMUGGLING.

   As guilty knowledge or evil intent are not necessary ingredients in statutory crimes or penalties, where the intention of the statute appears not to make them so, in an action against the master of a vessel, under section 2873, for unlading goods without a permit, the master's want of knowledge or of participation in the unlawful acts is no defense.

2. SAME—DESIGN OF STATUTE—MASTERS OF VESSELS.

   The design of section 2873, like that of section 50 of the act of March 2, 1799, is to secure vigilance on the part of masters, or the persons having charge of the vessel, in preventing illicit traffic, which by virtue of their command they are presumed to be able to prevent.

3. SAME—DERELICT OR SALVAGE GOODS—ACCIDENT.

   Section 2873, imposing a penalty for unlading goods without a permit, is to be interpreted and applied according to its intention,—viz., to impose vigilance in preventing such unlading upon the persons having command,—and it is not to be applied in cases evidently outside of the intention of the statute, such as derelict or salvaged goods, or goods unladen in case of accident to save them from loss, nor to cases of unlading by a superior attacking force; nor, in like manner, where it is affirmatively shown that it could not by any practicable means be prevented by the master or person in command.

4. SAME—SECTION 16, MOIETY ACT—QUESTION FOR JURY.

   In an action for a penalty against the master in such cases, section 16 of the moiety act (1 Supp. Rev. St. 80) requires only that the intent with which the acts were done by the persons who committed them should be submitted to the jury, not the intent of the master.

5. SECTIONS 2873 AND 2768, HOW CONSTRUED.

   Sections 2873 and 2768 are to be construed together as the equivalent of section 50 of the act of March 2, 1799, and as imposing only one penalty, viz., a penalty either upon the master, or, if he be not in command at the time, then upon the person who is in command of the vessel.

6. SAME—SUIT AGAINST ABSENT MASTER.

   Where 77 packages of cigars were secretly lowered for the purpose of smuggling from the bows of the steamer S., at 2 o'clock A. M., while she lay at anchor at lower quarantine, New York harbor, while the master was absent from the ship, he having gone the day previous to the New York custom-house, 15 miles distant, to make entry of the arrival of the vessel, as he was bound to do by law, *held* that, though the penalty of $400 was incurred, the suit should have been against the person in actual command of the vessel at the time, and not against the absent master, and that the latter was not liable.

Action to Recover Penalty.

*S. L. Woodford*, Dist. Atty., and *Wm. C. Wallace*, Asst., for the United States.

*Goodrich, Deady & Platt*, for defendant.

BROWN, J. This action was brought under section 2873 of the Revised Statutes, to recover a penalty of $400 against the defendant,

as master of the steam-ship Saratoga, for the unlading of goods from the steam-ship in the night-time, and without a permit, contrary to the provisions of section 2867. The steamer arrived at New York from Havana in the forenoon of July 13, 1881, and dropped anchor at lower quarantine. The master left the vessel to make due entry of her arrival at the custom-house, as required by law, and did not return until the following morning. During the night, at about 2 A. M. of the 14th, a small boat from the vicinity of Coney island approached the bows of the steamer, and after a few signals, evidently preconcerted, came along-side the bows and received 77 boxes of cigars and 1,600 bundles of cigarettes, lowered from the side of the steamer, and immediately put off for shore. This was observed by detectives who were watching from another vessel, and the men and cigars were pursued and captured. The cigars were afterwards condemned and sold. This action was thereupon commenced against the master to recover the statutory penalty of $400; and a separate libel was also filed against the Saratoga, to enforce a lien upon her for the same penalty under section 3088 of the Revised Statutes. It being conceded that neither the master nor owner was "a consenting party, nor privy to the illegal act," this court held that the act of February 8, 1881, (1 Supp. Rev. St. 591,) was applicable, and that the vessel could no longer be seized for the enforcement of the penalty incurred by the master. *The Saratoga,* 9 FED. REP. 322. This decision has since been affirmed on appeal in the circuit court. 15 FED. REP. 382.

Upon the trial of the present action it was contended on the part of the defendants (1) that under section 2873 the master is not liable for such illegal acts unless he is knowingly concerned therein; (2) that under section 16 of the moiety act of June 22, 1874, (18 St. at Large, 186; 1 Supp. Rev. St. 80,) no penalty can be imposed on the master unless there was an actual intention on his part to defraud the United States.

Upon the above facts and others not necessary to be set forth here, the court submitted to the jury the following questions: *First.* Were the cigars in question unladen without a permit? *Second.* Was the defendant at that time master of the Saratoga? *Third.* Were the cigars unladen with the actual intention of defrauding the United States? *Fourth.* If so, did the defendant participate in this intention, or was he privy to it? *Fifth.* Was the defendant knowingly concerned in, or did he aid or concur in, the unlading of these cigars, directly or indirectly? The jury answered "Yes" to each of the three

first inquiries, and "No" to the last two. By consent the question was reserved for further argument as to the proper verdict to be rendered upon these findings.

It is strenuously contended on the part of the defendant that by the true construction of section 2873 the master is not liable unless he knowingly concurs in the unlawful acts. This section is derived from section 50 of the collection act of March 2, 1799, (1 St. at Large, 665,) and that section provides, in cases of unlawful unlading, that "the master or person having the charge or command of such ship or vessel, and every other person who shall knowingly be concerned or aiding therein," etc., "shall forfeit the sum of $400," etc. The provision that "the person having the charge or command of such ship or vessel shall be liable" is covered by section 2768 of the Revised Statutes, which declares that "the word 'master' as used in this title may include any person having the chief charge or command of the employment and navigation of the vessel."

The clear reading, both of the original act and of section 2873 of the Revised Statutes, makes a distinction between the "master or person having charge of the vessel," and "others who may aid or be concerned" in the unlawful unlading of the goods. Knowledge on the part of the latter is plainly necessary to be shown, but not, as I read it, in the former. The general purpose of this provision, as well as various others in the same title, is to prevent smuggling and frauds on the revenue. The opportunities which vessels approaching the coast, or coming into port, have for the unlawful discharge of goods, and the difficulty on the part of the government in detecting the particular persons guilty of it on board ship, are so great that convictions would be very few, and the prevention of smuggling well nigh impossible, if no punishment or penalty on any person connected with the vessel were inflicted, except upon those proved to have knowingly taken part in the unlawful acts. From the necessity of the case, therefore, and from the fact that the "master or person having charge of the vessel" has supreme authority and control over the ship, the receipt and delivery of goods, and the persons on board, and from his presumed ability, therefore, to prevent the unlawful delivery of goods, section 2873, like section 50 of the act of March 2, 1799, is designed to make the master answerable for any unlawful unlading of goods without proof of his actual knowledge of or participation in the unlawful acts. The design is to secure vigilance on his part to prevent illicit traffic; and if he does not do it, he is presumably negligent, and punishable for such negligence. *The Har-*

*mony,* 1 Gall. 128; *The Industry,* Id. 114; *The Saratoga,* 9 FED. REP. 328.

The maxim of the common law insisted on by counsel, which makes guilty knowledge or an evil intent a necessary ingredient in the punishment of crimes, (*U. S.* v. *Silk Umbrellas,* 12 FED. REP. 412,) does not necessarily apply to statutory offenses or penalties. Where the statute prohibits an act being done, or being done under certain circumstances, without making knowledge or intent an ingredient in the offense, the person doing the act is bound at his peril to see that the circumstances are such as do not make it unlawful. Thus, where the statute makes criminal the sale of liquors that are "intoxicating," or their sale to an "habitual drunkard," or the sale of adulterated milk or tobacco, or prohibits bigamy or adultery, or the enticing away of infants within a certain age, want of knowledge of the particular facts making the act unlawful is no defense; the offender will be held guilty, though he had no knowledge that the liquors were intoxicating, or the vendee an habitual drunkard, or that the milk or tobacco were adulterated, or that the person cohabited with was a married woman, or that the person enticed was within the prohibited age. *Com.* v. *Boynton,* 2 Allen, (Mass.) 160; *State* v. *Heck,* 23 Minn. 549; *Com.* v. *Waite,* 11 Allen, (Mass.) 264; *Reg.* v. *Woodrow,* 15 Mees. & W. 404; *Com.* v. *Mash,* 7 Metc. 472; *Com.* v. *Elwell,* 2 Metc. 190; *Reg.* v. *Olifier,* 10 Cox, Crim. Cas. 402.

Many other cases to the same effect are collected in the elaborate argument of the attorney general in the case of *Halsted* v. *State,* 41 N. J. (12 Vroom,) 577, 583.

In the case last cited, BEASLEY, C. J., says:

"Nothing in law is more incontestable than that, with respect to statutory offenses, the maxim that crime proceeds only from a criminal mind does not universally apply. The cases are almost without number that vouch for this. * * * As there is an undoubted competency in the law-maker to declare an act criminal, irrespective of the knowledge or motive of the doer of such act, there can be, of necessity, no judicial authority having the power to require, in the enforcement of the law, such knowledge or motive to be shown. In such instances the entire function of the court is to find out the intention of the legislature, and to enforce the law in absolute conformity to such intention. And in looking over the decided cases on the subject, it will be found that in the considered adjudications this inquiry has been the judicial guide. And, naturally in such an inquiry, the decisions have fallen into two classes, because there have been two cardinal considerations of directly opposite tendency, influencing the minds of judges; the one being the injustice of punishing unconscious violations of law; and the other the necessity, in view of public utility, of punishing, at times, some of that very class of offenses."

This principle is not merely applicable to affirmative acts, but extends also to cases of mere omission of what, under the circum stances, is a legal duty, (*U. S.* v. *Bayaud, post,* 376, recently de- cided in this circuit; as on a sale of poisonous drugs, the omission to attach a proper cautionary label;) and so in many other cases of negligence. Bish. Crim. Law, §§ 216, 313, 316. "In these cases," says Bishop, (section 317,) "the law casts upon the master a duty of care in the employment of his servants, and a constant supervision. The real thing punishable, therefore, is his own carelessness."

That the intention of the statute in section 2873 is not to make knowledge on the part of the master a necessary ingredient in incur- ring a penalty, is to be inferred not only from the distinction made by that section between the master and other persons aiding him, but from the fact that the same distinction is found in other sections of the same title, in some of which knowledge, or fraudulent intent, is expressly made a necessary ingredient, as in sections 2839, 2864, 2865, 2873, 3051, 3082; while in other sections it is not so, as in sections 2772, 2774, 2775, 2797, 2802, 2809, 2828, 3069. That for- feitures and penalties were expected to be incurred under these pro- visions of law, notwithstanding the want of knowledge or evil intent, is shown also by the provisions for remission of the forfeiture or penalty by the secretary of the treasury, whenever, in his opinion, the same was incurred without "*willful negligence,* or any *intention* of fraud, in the person or persons incurring the same." 1 St. at Large, 596; Rev. St. § 5292; 1 Supp. Rev. St. p. 81, § 18. A considerable portion of the forfeitures on importations under the sections above cited have been had under this construction of the law, where the im- porter had no knowledge or intent of wrong; and applications to the secretary of the treasury for remission have accordingly been of very frequent occurrence on that ground.

I have no doubt that the intention of section 2873, as respects the masters of vessels, is similar, and that mere want of knowledge of the unlawful unlading is no defense; and such, I think, is, in effect, the decision in the case of *The Sarah B. Harris,* 4 Cliff. 147. I do not mean to hold that there are no possible circumstances in which the master may be exonerated from liability. If while the Saratoga was lying at anchor she had taken fire, and the goods were unladen without a permit in order to save them from being consumed; or if, being about to sink, the goods were removed to save them from loss, although they would be literally unladen without a permit, it is plain that that would not be such an unlading as the statute contem-

plates, nor within the intent of the statutory prohibition; and, independent of the moiety act, it would be the duty of the court, in construing the statute according to its obvious purpose, to hold that it did not apply to such a case, and that no penalty was incurred.

Again, the law, as STORY, J., says in *Jackson* v. *U. S.* 4 Mason, 190, "does not require impossibilities, but supposes the party able to comply, and the case such as admits of compliance, with its requisitions." The law does not apply to cases of derelict or salvaged goods, where there are no means of complying with the requirements of the law, nor to cases of inevitable accident or necessity. *Peisch* v. *Ware*, 4 Cranch, 347, 364, 365; *The Waterloo*, 1 Blatchf. & H. 120; *U. S.* v. *33 Barrels of Spirits*, 1 Low. 241; *U. S.* v. *Randall*, 1 Spr. 546.

Section 50 of the act of 1799 provides, as I have said above, for the liability "of the master or person having the charge or command of such ship or vessel." This alternative liability "of the master or person having charge or command of the vessel" indicates on the face of the statute itself, as it seems to me, the ground of the liability, viz., the presumed ability of the master or person having command to prevent the offense. The statute should, therefore, be construed and applied with reference to the reasons and grounds of it, apparent upon its face. In effect the statute charges upon the master or person in command the duty of preventing the unlawful unlading of goods, and the penalty is inflicted upon the one or the other of them because of his presumed negligence in not preventing it. The statute thus construed is brought into harmony with the general principle stated by THOMPSON, J., in the *Case of 651 Chests of Tea*, 1 Paine, 499, 507, in which he says: "I am not aware of a single instance where * * * a forfeiture is incurred that it does not grow out of some fraud, misconduct, or *negligence* of the party on whom the penalty is visited."

If goods were unladen from a vessel by an overwhelming attacking force, which the master could not resist, no one, I think, would claim that the master was liable; and so if unladen through any other cause, which the master, after performing his whole legal duty, could not, in fact, prevent. These are matters of defense; and if it were shown that all possible and practicable means were used to prevent goods being smuggled on or off the vessel, and to discover them if brought aboard, not only would smuggling very speedily be suppressed or reduced to a minimum, but on proofs of such facts I should regard it as the duty of the court to hold that the penalty was not incurred. *The Queen*, 11 Blatchf. 416; *U. S.* v. *Sunberg*, unreported;

*The Stadacona,* 14 Int. Rev. Rec. 147. In this case the proof was merely that orders were given by the captain to make an examination of the vessel, and that a report was made to him that nothing was discovered. It is needless to say that this is altogether insufficient. Every part of a vessel is known, or should be known, to her officers; and goods so bulky as these, it must be assumed, would have been found on proper search, or the failure to find them should be more clearly explained or accounted for. *The Missouri,* 9 Blatchf. 433.

2. By section 16 of the act of June 22, 1874, (1 Supp. Rev. St. 80,) it is provided "that in all actions, suits, and proceedings," etc., "to enforce or declare the forfeiture of any goods," etc., "or to recover the value thereof, or any other sum alleged to be forfeited by reason of any violation of the provisions of the customs revenue laws, in which action," etc., "an issue or issues of fact 'shall have been joined, it shall be the duty of the court, on the trial thereof, to submit to the jury, as a distinct and separate proposition, whether the alleged acts were done with an actual intention to defraud the United States. * * * And unless intent to defraud shall be so found, no fine, penalty, or forfeiture shall be imposed."

It is claimed on the part of the defendant that this section means an intent to defraud on the part of the person sued. The statute does not say whose intent is referred to; what is required to be submitted to the jury is whether "the alleged acts" were done with the intent to defraud. I have no doubt that under this section it is the duty of the court to submit to the jury the question whether the prohibited act was done with the intent to defraud on the part of those who committed it. In the case even of an unlading of goods to avoid loss by fire or by the sinking of the ship, the jury might find that the removal was or was not also accompanied with the intent to smuggle the goods unladen. In the present case the question was submitted to the jury, and they found that "the alleged acts" were done with the intent to defraud, but that the master was not privy to it. I think the intent referred to in this section does not include the intent of masters of vessels who are made responsible for the illegal and fraudulent removal of goods by persons under their control. "The alleged acts" referred to are the acts necessary to be set forth in the suit as the legal cause of action; and the intent referred to is the intent with which the acts were done by the persons who did the acts. Section 16 applies to that extent, and, in my judgment, no further. The only acts needed to be set forth in a suit for the penalty are those pertain-

ing to the unlawful unlading of the goods. If these acts were done with intent to defraud, then the master is, by statute, made liable to the penalty on account of his presumed power to prevent it. His intent is not in question. I should be slow to believe that it was the intention of congress in passing the act of 1874 to absolve masters of vessels from all responsibility for smuggling by those on board and under their control, or to relieve masters from that legal duty of vigilance to prevent smuggling which has existed and been deemed necessary to the protection of the government ever since the collection act of 1799. The language of section 16 of the act of 1874 does not require this construction. It is foreign, I think, to the general purpose of the act. It would be a consequence never contemplated by congress, and hence should not be so construed, where the language does not require it.

The passage, moreover, of the act of February 8, 1881, (1 Supp. Rev. St. 591,) and the memorial which led to it, (*The Saratoga*, 9 FED. REP. 322, 330,) five years and upwards after the passage of the act of 1874, show that neither masters nor vessels were deemed to be relieved by the act of 1874 for liability for penalties through any innocence on the part of the master.

The whole object and scope of the act of 1881, above referred to, go no further than to relieve the vessel from seizure or forfeiture, where it appears that the owner or master was not a consenting party, or privy to the alleged illegal act. Under the law previously existing, the vessel was liable to be seized for the recovery of the penalty imposed upon the master; but if the master, after the passage of the act of 1874, was not liable unless there was intent to defraud on his part, of course the vessel would not have been liable, and she could not have been seized for the recovery of the penalty imposed on the master, because in such case there was no such penalty. Under the construction of the act of 1874 contended for by the defendant, the act of 1881 would, therefore, have been entirely superfluous. For under that act the vessel still remains liable as before, if the master was privy to the illegal act, because the act only purports to relieve the vessel from seizure when "neither the owner nor master were a consenting party or privy to the unlawful act."

As the cigars in question were unladen in the night-time without a permit, with the intent of smuggling, and therefore with intent to defraud the United States, a penalty was incurred on the part of the master or person in command. There was no proof in defense sufficient to show either that the cigars might not have been discovered

previously by that reasonable diligence which men exercise in their own affairs to prevent frauds, or by such diligence as men usually exact from their own employes, and which the government has a right to demand of the owners and masters of vessels, as a part of its revenue system, to prevent the commission of frauds by those on board.

3. As it turns out upon the evidence, I feel bound to hold, however, that in this instance the suit for a penalty has been brought against the wrong person. During the day previous the master had come up to the custom-house, some 15 miles above the place of anchorage, to make entry of the arrival of the steamer, as he was by law bound to do under a penalty of $1,000, and he did not get back to the vessel until the morning after the unlading of the cigars, and the jury found that he was in no way privy to it, directly or indirectly. During this absence from the vessel about the business of the ship, though he did not cease to be "master," and the jury have found that he was so, he was not during that absence the person having the charge or command of the ship at the time, within the meaning of section 50 of the act of 1799 and of section 2768 of the Revised Statutes. If section 2768 and section 2873 were to be construed without any reference to the preceding law, there might be difficulty in determining whether both the master and the first officer, in a case like this, were not liable to the penalty. The words, "having the chief charge or command of the employment and navigation of the vessel," in section 2768, in connection with section 2873, must have reference to the charge or command at the time when the unlawful unlading or delivery is committed, and that person in this case was obviously the first officer, and not the absent captain.

But on comparing the various provisions of title 34 of the Revised Statutes with the act of March 2, 1799, and the various acts amendatory thereof, I am satisfied that there was no intention in the Revision to extend the penalty for the unlawful unlading of goods under section 2873 beyond that which existed under section 50 of the former act, which provides that in such case "the master or person having charge or command of such ship or vessel" shall be liable for the penalty. In numerous sections of the collection act of 1799 this same alternative phrase is used. In title 34 of the Revised Statutes that phrase is not used; but, as it is to be presumed, for the purpose of avoiding needless repetition, it is provided by section 2768 that the "word 'master,' as used in this title, may include any person having the chief charge or command," etc. I think the intention

of both statutes is the same.    Under section 50 of the act of 1799, it is clear that the penalty could not be imposed upon both the master and other person in charge, etc., under this alternative clause, but only upon the one or the other,—namely, the one who at the time of the unlawful act is on board and charged with the control or command of the vessel.    In this case it was admitted, and the evidence clearly showed, that the master was not on board nor in command at the time; and, as the jury have found that he was in no way privy to the unlading of the goods, on this ground judgment should be entered for the defendant.