## THE C. G. WHITE.

### THE C. G. WHITE et al. v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. November 2, 1894.)

1. CUSTOMS LAWS—VIOLATION—PENALTY OF MASTER AND MATE—LIABILITY OF VESSEL.

Rev. St. § 3088, providing that when a vessel, its owner or master, has become subject to a penalty for violation of revenue laws, it shall be holden therefor, does not render it liable for a penalty imposed on its mate under section 2867, making the master and mate respectively liable for a penalty where the cargo of a vessel is unladen without authority of the customs officer.

2. SAME—ENFORCEMENT.

Under Rev. St. § 3088, providing that, when a vessel's master has become subject to a penalty for violation of revenue laws, it shall be holden for the payment thereof, and may be seized and proceeded against to recover the penalty, the lien may be enforced by libel of the vessel without judment being first obtained against the master.

Appeal from the District Court of the United States for the District of Alaska.

Libel by the United States against the schooner C. G. White. Decree for libelant. Libelee and H. P. Lauritzen and others, claimants, appeal. Modified.

Andros & Frank, for appellants.

Charles A. Garter, U. S. Atty.

Before McKENNA and GILBERT, Circuit Judges, and HAWLEY, District Judge.

GILBERT, Circuit Judge. The schooner C. G. White cleared from the port of San Francisco on the 31st day of January, 1893, bound for a hunting and fishing voyage. She had on board only ballast and sea stores, guns and ammunition, and hunting and fishing gear. She was obliged to put into Honolulu to leave mail and get water. She was compelled by the authorities there to make entry at the customhouse before landing her mail or procuring water. She remained there 14 hours, and took on board nothing but water. She then proceeded to sea, and on March 18th she was compelled to put into the port of Yokohama to repair her rudder head, which had become shaky and was unsafe. The repairs required five days. By the laws of the port, a vessel, after being at anchor 48 hours, was

required to enter at the customhouse. The schooner therefore made entry, but nothing was unladen from her, and nothing was taken on board, except water and food for the crew. After clearing from this port, the vessel proceeded upon her voyage, and when off the Japan coast the first seals were caught. Thereafter, proceeding to the Alaskan waters, she touched at Senak Island, where it was learned that the schooner Czarina was in Caton harbor. The White proceeded thither to get mail from the Czarina, and while there the master of the White requested the master of the Czarina to take to San Francisco the skins of the seals that had been caught off the Japan coast, and they were accordingly transferred. The vessel was seized upon a libel for information filed in the district court of the United States for the district of Alaska, alleging that the acts above set forth are a violation of section 2867 of the Revised Statutes of the United States, whereby the vessel had become forfeited to the United States. The vessel was claimed by the master for the owners, and an answer was filed by the claimants, denying that the master, mate, or vessel had become liable for a penalty, or the vessel to forfeiture. A decree was entered adjudging that the United States have judgment against H. P. Lauritzen and J. Carlton, who were respectively the master and the mate—

"For the sum of one thousand dollars each, aggregating two thousand dollars in all, and the costs of this suit, and that, unless said judgment and costs are paid, due process be issued against the said schooner C. G. White, and said vessel be sold, and that out of the proceeds of such sale said judgment and costs and accruing costs be paid."

Section 2867 of the Revised Statutes provides as follows:

"If after the arrival of any vessel laden with merchandise, and bound to the United States, within the limits of any collection district, or within four leagues of the coast, any part of the cargo of such vessel shall be unladen, for any purpose whatever, before such vessel has come to the proper place for the discharge of her cargo, or some part thereof, and has been there duly authorized by the proper officer of the customs to unlade the same, the master of such vessel and the mate, or other person next in command, shall respectively be liable to a penalty of one thousand dollars for each such offense, and the merchandise so unladen shall be forfeited," etc.

Section 3088 provides:

"Whenever a vessel, or the owner or master of a vessel, has become subject to a penalty for a violation of the revenue laws of the United States, such vessel shall be holden for the payment of such penalty, and may be seized and proceeded against summarily by libel to recover such penalty."

The appellants contend first that the vessel was not liable for the penalty imposed upon the mate. The terms of these statutes are plain, and require no interpretation. There is no provision by which the vessel can be holden for the penalty which is denounced against the mate. Unless the vessel has herself incurred the penalty, it is only the owner or the master whose acts in violation of the revenue laws render her liable to seizure. So far, therefore, as the decree attempts to hold the vessel subject to sale for the penalty of $1,000 incurred by the mate, it is erroneous.

It is contended further that the judgment against the master and the mate for the aggregate sum of $2,000 is void for the reason that, in a proceeding in rem against the vessel, a judgment in personam cannot be rendered against persons who were not parties to the rec-

ord, nor served with process, and that a decree to enforce such judgment is void. So far as concerns the power of the court to enforce the lien upon the vessel without first obtaining judgment for the penalty, the appellants' contention is not in accord with the reasonable and fair construction of the statute, nor with the authorities. The Missouri, 3 Ben. 508, Fed. Cas. No. 9,652; Id., 9 Blatchf. 433, Fed. Cas. No. 15,785; U. S. v. The Queen, 4 Ben. 237, Fed. Cas. No. 16,107; Id., 11 Blatchf. 416, Fed. Cas. No. 16,108. In these decisions it is held that the words, "holden for the payment of such penalty," are intended to create an original liability upon the part of the vessel for a penalty equal to that imposed upon the owner or master, and that the provision for the seizure of the vessel and the summary proceeding against her precludes the idea of delay, and carries the meaning that the seizure and proceeding may be predicated directly upon the unlawful act whereby the penalty is incurred, and without preliminary action or proceeding to establish the liability of the owner or the master. The district court undoubtedly had the power to decree the sale of the vessel on account of the penalty incurred by the master, in the sum of $1,000 and costs. and the cause will be remanded to the district court, with instructions to modify its decree in accordance with this opinion.