## UNITED STATES v. THE HIPPO.

### In re CLAUSSEN, Claimant (TONGASS TRADING CO., Intervener).

First Division. Ketchikan. December 2, 1926.

No. 937–KA.

1. **Customs Duties** ⟨key⟩130(4)—**Foreign Vessels Trading in Alaskan Waters without Entry at Custom House—Forfeiture.**

The Canadian gas screw Hippo, of 8 tons' burden, engaged in buying fish from American traps in Alaskan waters, entered and departed from such waters without reporting or entering at any American port of entry. *Held,* the vessel is liable to forfeiture for departing from American waters, after arriving there, without making a report or entry under the provisions of the Tariff Act of 1922 (42 Stat. 858).

2. **Customs Duties** ⟨key⟩129, 130(3)—**Master of Foreign Vessel Liable to Fine for Failure to Make Entry—Vessel Subject to Summary Libel and Lien to Recover the Fine.**

The master of the Canadian gas screw Hippo failed to make formal entry of the vessel at the custom house in Alaska, and became liable to a fine of $1,000. *Held,* the vessel was subject to seizure and summary libel to recover the fine.

3. **Customs Duties** ⟨key⟩129—**Fish** ⟨key⟩16—**Failure of Master of Incoming Foreign Vessel to Deliver Manifest, Subject to Fine of $500—No Lien on Vessel.**

Where the master of a foreign vessel in Alaskan waters departs without delivery of manifest and clearance, he is subject to a fine of $500; but no lien attaches to the vessel to collect the penalty, for which the master is liable, for a violation of this section.

The amended information filed herein on August 28, 1926, contains 23 statements, designated as "articles," set up as a basis for the condemnation of the gas screw Hippo as forfeited under the provisions of the Tariff Act of Congress of September 21, 1922 (42 Stat. 858), and section 4197, R. S. U. S. (46 USCA § 91 [U. S. Comp. St. § 7789]). The first 9 articles are couched in identical language charging violations of chapte 356, title 4, § 585, of the Tariff Act of Congress of September 21, 1922 (19 USCA § 487 [U. S. Comp. St. § 5841h4]). They are all separately stated, as of separate dates, falling on July 1, July 4, July 7, July 9, July 10, July 11, July 12, July 15, and July 20, 1926. The allegations of each of these articles are that on

⟨key⟩See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

July 20, 1926, the duly qualified and acting commanding officer of the Coast Guard vessel Cygan seized a certain foreign vessel, known as the gas power vessel Hippo, of 8 tons' burden, in the waters of Lincoln Channel, in the First division of the territory of Alaska, and within the jurisdiction of this court, for violation of certain revenue and navigation laws of the United States above mentioned, and on July 21, 1926, delivered the said vessel into the custody of the United States customs officers for the said district at Ketchikan, Alaska; that said vessel remained in the custody of said customs officers until July 21, 1926, when it was delivered to the United States marshal for the said district and territory by virtue of a writ of seizure issued out of this court, and that said vessel ever since said date and now is in the custody of said United States marshal; that the said gas power boat Hippo, on or about July 1, 1926, and at subsequent dates hereafter ·mentioned, arrived within the limits of the United States customs district for the territory of Alaska, being district No. 31, ,from a foreign place or port, namely, from Prince Rupert, in the province of British Columbia, Dominion of Canada, the exact date being unknown and not stated, and, not because of stress of weather or other necessity, departed from said customs district without making a report or entry according to the provisions of chapter 356, tit. 4, § 585 (U. S. Compiled Statutes, § 5841 et seq.), the said Hippo being then and there a vessel required by law to make a formal customs report or entry, and that the said vessel was not at any of the times mentioned a common carrier—all in violation of section 585, chapter 356, title 4, of the act of Congress known as the Tariff Act of 1922.

Articles 10 to 18 charge that the vessel Hippo arrived within the customs district of Alaska on the several dates mentioned in the preceding articles, from a foreign port, without making entry at any customs house in the district within 48 hours after arrival, as required by section 435, chapter 356, title 4, of the Tariff Act (19 USCA § 245 [U. S. Comp. St. § 5841e4]), whereby the master thereof became liable to a fine of $1,000 and the vessel aforesaid became subject to libel proceedings to recover the same.

Articles 19 to 23 charge a violation of section 4197, R. S. U. S., in that the vessel Hippo departed from the customs district of Alaska for a foreign port without the master having

subscribed to or sworn to a manifest, and without having cleared on the several dates mentioned in the first 9 so-called articles of the information.

The libel was prosecuted on behalf of the United States. A claim was duly filed by John Claussen, through his proctors, Messrs. Duggan & McCain. No exceptions were taken to the amended libel by the claimant, but an answer was filed by the claimant, stating that the vessel Hippo did not become forfeited in the manner and form as in the libel in that behalf alleged. Testimony was taken by deposition and before the court on behalf of the United States and on behalf of the intervener. No testimony was submitted on behalf of the claimant.

A. G. Shoup, U. S. Dist. Atty., of San Jose, Cal.

Duggan & McCain, of Ketchikan, for respondent and claimant.

W. A. Holzheimer, of Ketchikan, for intervener.

REED, District Judge. Section 585 of chapter 356, title 4 of the Tariff Act of September 21, 1922 (Compiled Statutes of the United States, § 5841h4), provides:

"That if any vessel or vehicle from a foreign port or place arrives within the limits of any collection district and departs or attempts to depart, except from stress of weather or other necessity, without making a report or entry under the provisions of this act, or if any merchandise is unladen therefrom before such report or entry, the master of such vessel shall be liable to a penalty of five thousand dollars, and the person in charge of such" vessel or "vehicle shall be liable to a penalty of five hundred dollars, and any such vessel or vehicle shall be subject to forfeiture, and any customs or Coast Guard officer may cause such vessel or vehicle to be arrested and brought back to the most convenient port of the United States."

The first nine articles, so called, are based on this section, and the testimony on behalf of the government clearly shows that the vessel Hippo, a Canadian vessel, of which one Jacobsen was master, was a foreign vessel, with her home port at Prince Rupert, British Columbia, in the Dominion of Canada. This vessel was seen by various witnesses for the government, either anchored, moored, or traversing American waters on the dates mentioned, within the customs district of Alaska, being district No. 31.

The testimony further shows, through the witness Dackins and the trap watchmen at Log House Harbor trap and Boat Rock trap, that the Hippo was engaged in buying fish for the Canadian market or canneries at Prince Rupert, B. C. Capt. Jacobsen, the master of the Hippo, on July 9th, stated to the witness Dackins that on July 4th he had bought fish to at least the amount of 1,400 from one Art Gamble, outside manager of the Tongass Trading Company, and that he had, on July 7th, bought 1,000 or more fish from the same person. He further stated that he was buying fish for Canadian parties. On July 4th he tried to buy fish from Sam Fylling, the watchman of the Boat Rock trap, and again on the 9th of July, while on the Hippo, he sought to buy fish from J. F. Capp.

The witness C. P. Haugen testified that on June 26th the Hippo came alongside of the vessel Kingfisher, of which Haugen was captain, and that the man at the wheel of the Hippo asked him where the cannery traps were located, and where Art Gamble was to be found, and that the person at the wheel of the Hippo told him that they were buying fish. The captain of the Hippo, Jacobsen, further told Capt. Desses, of the Coast Guard vessel Cygan, when the seizure was made, that he was buying fish and taking them to Prince Rupert for sale.

While the testimony clearly shows that the Hippo was being used by her master, Jacobsen, for the purpose of trading in American waters on June 26, July 4, July 6, July 9, July 10, July 18, and July 20, the dates of her departure from American waters are not definitely shown. The master, in his report of July 22, filed with the customs officers, stated that on July 6 the Hippo arrived at the cannery dock of the Tongass Trading Company at Nakat Inlet at about 3 p. m., en route to Zayas Island; that the centrifugal pump was out of order, and that he considered it unsafe to proceed to Zayas Island without repairing it; that the repairs were made, and that he then proceeded on his voyage to Zayas Island in Canadian waters. This report of the master covers only three of the dates mentioned in the testimony of the government's witnesses, namely, July 1, when the Hippo was picked up by the vessel Barron; July 6, when it was at the Nakat Inlet cannery for repairs; and July 20, when seized by the Cygan.

In view of the testimony submitted by the government of the purchase of fish by the master, Jacobsen, on July 4 and

July 6, and his attempt to purchase more, by offering a higher price than that prevailing on the American side of the boundary, and that he stated in his report to the customs office that on July 6 he was en route to Zayas Island, in Canadian territory, I must consider that the Hippo did not remain in American waters from July 1 to July 20, but departed therefrom without making a report as required by section 585, chapter 356, title 4, of the Tariff Act of 1922, and that under that section the vessel is liable to forfeiture for departing from American waters after arriving there without making a report or entry under the provisions of that section, and not being required to do so from stress of weather or other necessity.

The second 9 so-called articles charge a violation of sections 433–435 of the Tariff Act of September 21, 1922 (19 USCA §§ 243–245 [U. S. Comp. St. §§ 5841e2 to 5841e4]), providing that the master of any vessel, arriving from a foreign port or place, shall, within 48 hours after his arrival within the limits of any customs district, make a formal entry of the vessel at the customs house by producing the register or, in lieu thereof, a certificate of the consul of the nation to which the vessel belongs, etc. There is no question from the testimony but that the master of the Hippo, Jacobsen, failed to comply with this section, and the master was liable to a fine of $1,000 for a violation of this section, and the vessel was subject to seizure and summary libel to recover the amount of the fine.

As to these articles, I cannot find that any fine was assessed against the master of the vessel by the customs officers, nor is there any allegation of any fine being assessed against the master of the vessel. Section 594 of the Tariff Act (19 USCA § 498 [U. S. Comp. St. § 5841h14]), provides:

"That whenever a vessel * * * or the owner or master * * * or other person in charge thereof, has become subject to a penalty for violation of the customs revenue laws of the United States, such vessel * * * shall be held for the payment of such penalty and may be seized and proceeded against summarily by libel to recover the same."

There being no question but that the master of the Hippo was subject to the penalty of $1,000 for a violation of section 435, chapter 356, title 4, of the Tariff Act of 1922, and that the vessel was liable for the payment thereof, under the provi-

sions of the section last quoted, I am of the opinion that the allegations of the so-called articles 10 to 19 are fully sustained by the evidence and that the United States has a lien on the said Hippo for the amount of the penalty to which the master was liable. See The Saratoga (C. C.) 15 F. 382; The C. G. White (C. C. A.) 64 F. 579; 29 Op. Attys. Gen. 369; The Mistinguette (D. C.) 14 F.(2d) page 754.

Articles 19 to 23 allege a lien on the vessel under the provisions of section 4197, R. S. U. S. This section provides:

"That the master or person having the charge or command of any vessel bound to a foreign port, shall deliver to the collector of the district from which such vessel is about to depart, a manifest of all the cargo on board the same, and the value thereof, by him subscribed," etc., "and * * * if any vessel bound to a foreign port departs on her voyage * * * without delivering such manifest and obtaining a clearance, as required, the master * * * shall be liable to a penalty of $500."

This section of the Revised Statutes was a part of chapter 22 of the Act of March 2, 1799, providing for the regulation of commerce, and is not a part of the revenue or customs-revenue laws of the United States. So far as I am able to ascertain, no lien attaches to the vessel to collect the penalty for which the master is liable for a violation of this section. I therefore cannot find that the vessel is liable to a libel for violation of this section by the master.

The intervener, the Tongass Trading Company, at the hearing submitted testimony to the effect that in the month of July, 1925, it furnished supplies to the Hippo on the order of the master, amounting to $38.65. This appears to be a valid lien on the vessel and should be ordered paid out of the proceeds of the sale.

From the foregoing I am of the opinion that the vessel Hippo should be condemned as forfeited to the United States, under section 585, chapter 356, title 4, of the Tariff Act of 1922, and that she is subject to a lien, on account of the United States, in the sum of $1,000, for the violation, by the master, of section 434, chapter 356, title 4, of the Tariff Act of September 21, 1922. I am further of the opinion that the Tongass Trading Company is entitled to a maritime lien on the vessel in the sum of $38.65. Let decrees be prepared accordingly.